In the Matter of **FOUR SEASONS NURSING CENTERS OF AMERICA, INC.,**
Debtor,

As relating to **Four Seasons Overseas, N.V., et al.,**
and
**Four Seasons Equity Corporation,**
Debtor,

As relating to **FSN Corporation,** a subsidiary to the original debtor.

Nos. BK–70–1008, BK–70–1008–A, BK–70–1008–B, BK–70–1008–C, BK–70–1008–D, BK–70–1129 and BK–70–1129–A.

United States District Court,
W. D. Oklahoma.

April 12, 1973.

Loyd Benefield, Benefield, Shelton & Johnson, Robert E. Manchester, and Robert C. Bailey, McClelland, Collins, Sheehan, Bailey & Bailey, Oklahoma City, Okl., for trustee, James R. Tolbert, III.

James D. Fellers, and Jap W. Blankenship, Fellers, Snider, Baggett, Blankenship & Bailey, Oklahoma City, Okl., for Finimtrust, S. A.

J. Vernon Patrick, Jr., and Marvin Cherner, in pro. per.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BOHANON, District Judge.

Finimtrust, S.A., Indenture Trustee, hereinafter referred to as "Finimtrust," through its privately employed attorney, James D. Fellers of the firm of Fellers, Snider, Baggett, Blankenship & Bailey, hereinafter referred to as "Oklahoma Counsel," has filed its application for compensation and reimbursement of expenses which contains the following items:

ATTORNEYS FEES AND EXPENSES OF
FINIMTRUST S.A., INDENTURE
TRUSTEE

| | | |
|---|---|---|
| Compensation to Indenture Trustee | $ 61,325.40 | |
| Direct Expenses to Indenture Trustee | 62,267.37 | |
| | | $123,592.77 |
| Paid to Oklahoma Counsel—fees | 147,040.00 | |
| Expenses to Oklahoma Counsel | 7,925.03 | |
| | | $154,965.03 |
| Paid to New York Counsel, Clearey, Gottlieb, Steen & Hamilton—fees | 77,600.00 | |
| Expenses to New York Counsel | 6,495.78 | |
| | | $ 84,095.78 |
| TOTAL | | $362,653.58 |

The application of J. Vernon Patrick, Jr. and Marvin Cherner, attorneys employed by Class G stockholder-creditors, for fees and expenses contained the following items:

ATTORNEYS FEES AND EXPENSES OF
J. VERNON PATRICK, JR.
AND MARVIN CHERNER

| | |
|---|---|
| Fees | $184,147.77 |
| Expenses | 15,277.00 |
| | $199,424.77 |

The above stated claims were heard by the Court on November 20, 1972, and after counsel for both groups of claimants introduced their testimony and rested, the Court directed the Trustee to file a Response to each of said claims; thereafter the Trustee did on December 29, 1972, file a Response. Further hearing on the above stated claims was conducted by the Court on January 10, 1973, at which time all evidence was introduced, and the matter was submitted to the Court to determine what fees, if any, should be allowed to the respective claimants. These Findings of Fact and Conclusions of Law relate to the claims hereinabove referred to in the order in which they have been set out.

*Findings of Fact Relating to the Claim of Finimtrust S.A., Indenture Trustee*

1. The Court finds that Four Seasons Nursing Centers of America, Inc., hereinafter referred to as "America," and other debtor corporations wholly owned by America or in a joint venture relationship with America, with home offices in Oklahoma City, Oklahoma, were engaged at all times relevant thereto in constructing and operating a large chain of nursing centers for elderly people in the United States and in building and operating child-care centers in the United States. These activities required large amounts of money which were raised by various means in the United States and in Europe.

2. The Court finds that America undertook to raise a substantial amount of money in Europe, and in order to do so was required by regulations of the Securities and Exchange Commission (S.E.C.); the United States Department of State; the United States Treasury Department (I.R.S.) and the Office of Direct Foreign Investment to form a corporation under the laws of the Netherlands Antilles. In accordance with these regulations and in order to sell debenture bonds in Europe, America did organize a separate corporation known as

Four Seasons Overseas, N.V., hereinafter referred to as "Overseas." In order to organize and make valid such a corporation under the regulations above referred to, it was necessary that Overseas sell not less than $3 million worth of its stock and that this $3 million of its stock so sold would be maintained by Overseas inviolately and not to be loaned in any speculative manner. After completion of the organization of Overseas, 15,000 $1,000 7¼ percent (1969–1984) debenture bearer bonds were sold for a total consideration of $15 million. This sum, less costs and expenses, was in due time placed in Overseas' bank account, and immediately the initial $3 million, which America had borrowed to purchase Overseas stock, was repaid therefrom, and all of said $15 million was a direct and guaranteed obligation of America. Overseas loaned, spent or otherwise disposed of all of said cash except for approximately $2,500,000 which became the source of controversy between the Court-appointed Trustee and Finimtrust until it was determined that reorganization was possible without the use of $2,225,000 of this money.

3. The Court finds that in June, 1970, before Chapter X bankruptcy proceedings were instituted by America, Overseas made an unsecured loan to America in the amount of $690,000 from its account in the Fidelity Bank, N.A., Oklahoma City, Oklahoma, and this loan brought about a serious question of favoring creditors in these proceedings and whether the $690,000 should be restored to Overseas. This loan, added to the remainder of the approximately $1,800,000 of the original $3 million stock purchase netted to Overseas approximately $2,500,000. The Court finds that there was never at anytime any serious question about the right to or ownership by Overseas of the approximately $2,500,000, subject, however, only to the Trustee's right to the use thereof in the operation of the debtor estates and the further right of the Trustee's use thereof if found to be necessary in the reorganization of the debt-

or estates. The Trustee and the Court found that the sum of $2,225,000 was in excess of the Trustee's needs; that this sum would be classified as sterile cash and that a part payment of principal to the Overseas bearer bondholders could be made from this cash and thereafter in due time such distribution was made.

4. The Court finds that beginning in August, 1970, and ending in October, 1971, Finimtrust's every action and desire was to have a cash distribution to the individual bondholders in the approximate amount of $2,500,000. The Trustee, Trustee's counsel, the S.E.C. and the Court could ill afford to make such a speedy distribution until first it was determined that reorganization could be effected without the use of said moneys. No single creditor or group of creditors had more interest in reorganizing the seven corporate debtor estates than did Overseas, in that without reorganization the assets of the seven debtor estates would have been liquidated and the Overseas group would have received little more than the $2,500,000 cash distribution. It was necessary for the Trustee and his attorneys to move slowly and to carefully determine what, if any, amount of cash distribution could be made to the Overseas investors and still safely insure that there could and would be a reorganization without the use of Overseas' cash.

5. The Court finds that by August 1, 1971, the Trustee determined from the careful study and audit reports made by Arthur Young & Company, a nationally known accounting firm, that the Trustee could make a cash distribution of $2,225,000, otherwise 15 percent to the Overseas bondholders, reserving $250,000 to pay Overseas' proportionate part of the cost of reorganization, no part of which was to belong to Overseas from and after the distribution of the 15 percent originally invested as above stated. It was contemplated that after such cash distribution, the Overseas investors would be entitled to stock distribution in the reorganized corporation for the balance of its account.

6. The Court finds that the European bondholders organized Finimtrust as its fiduciary under the laws of the Grand Duchy of Luxembourg, and under an indenture executed in Luxembourg in September, 1969, Finimtrust was designated as its trustee vested with the representation of all European Overseas bondholders.

7. The Court finds that Finimtrust, through its Oklahoma Counsel, took the position that Overseas should have a separate Trustee and separate counsel and should possess the $2,500,000. The Trustee, Trustee's counsel, the S.E.C. and the Court disagreed with this contention, and as a result of the different positions and actions thereon, Finimtrust took five appeals to the United States Court of Appeals for the Tenth Circuit. The briefing and argument were continued from time to time and the Circuit Court at no time passed upon the question of dual trustees.

8. The Court finds that the effort of Finimtrust, through Oklahoma Counsel, to have two trustees attempting to reorganize the seven debtor estates was baseless and wholly without merit, that it would have been costly and would have constituted a disservice to reorganization; that it was necessary for a sole Trustee with a single staff of attorneys, appraisers, auditors, etc. to evaluate and produce a Plan of Reorganization that was fair, just and equitable to all stockholders and creditors and that a separate Trustee for Overseas would only frustrate, annoy, antagonize and delay the important work of reorganization and that Finimtrust's action did not meet the "worthy advocate" test.

9. The Court finds that the first Court-appointed Trustee, Norman Hirschfield, who later resigned, and James R. Tolbert, III, his successor, were directed by the Court to make monthly or periodical reports to all of the stockholders and creditors. Finimtrust and its attorneys received these reports, 26 in all, which explained in detail the condition of the debtor estates, the work being done by the Trustee, the work done by Trustee's attorneys and the actions of the Court, past, present and future. These Trustee's reports gave a satisfactory, intelligent and convincing concept of the honesty, integrity, wisdom, ability and vigorous action of the Trustee and his staff of attorneys to protect everyone's rights fairly, justly and equitably and to afford each creditor and stockholder a full opportunity to be heard and to make any objections to the Trustee's program that any stockholder or creditor desired to make. These reports should have and in all things did substantially satisfy all creditors' and stockholders' desire for knowledge and truth regarding the reorganization of the debtor estates.

10. The Court finds that in addition to the Trustee's reports, each stockholder and creditor, including Finimtrust, received detailed financial reports of every analysis of the books and records of the debtor estates, both separate and consolidated, made by the CPA firm of Arthur Young & Company at a total cost to the debtor estates in excess of $400,000; that these reports in and of themselves should have and did afford each stockholder and creditor all of the information they needed to form an opinion and conclusion that the Court-appointed Trustee and the Court-appointed attorneys representing the Trustee were doing everything possible in an intelligent, skillful, vigorous and expedient manner to reorganize the debtor estates and get said corporate debtor estates out of the bankruptcy court at the earliest possible date. The Trustees' reports and the reports of Arthur Young & Company furnished to all stockholders and creditors, including large investment companies, mutual funds and Finimtrust, all of the information they or any of them should have required in order to make an intelligent decision.

11. The Court finds from all of the evidence and briefs which have come before this Court that there was no overriding important legal issue on which Finimtrust and its attorneys had to protect Overseas' property or the properties

of the debtor estates. Overseas was wholly owned by America. America owed Overseas bondholders $15 million on its guarantee, and it was at all times so recognized. It was the Court-appointed Trustee's duty to marshal all assets, to adjust its liabilities with all creditors, secured and unsecured, to have undisputed control of all assets of the reorganized corporation and to reorganize all debtor estates, including Overseas, for the benefit of all creditors, stockholders and stockholder-creditors. The Court-appointed Trustee and the Court-appointed attorneys were at all times skillful and capable of performing their assigned duties, and no outside or privately employed attorneys are entitled to compensation or expenses for non-beneficial services. At no time did Finimtrust directly or indirectly file any suggested Plan of Reorganization or file any objection to the Trustee's Plan, but did little more than acquiesce in the work of the Trustee and his Court-appointed attorneys and the S.E.C.

12. The Court finds that Finimtrust, through its Oklahoma Counsel, has claimed reimbursement for $147,040.00 in fees and $7,925.03 in expenses based substantially upon Exhibits C–1 through C–23 attached to Finimtrust's claim for fees and expenses; that of these 23 exhibits, there are 139 deletions; that these Exhibits C–1 through C–23 demonstrate per se that Oklahoma Counsel was spending its time overseeing the Court-appointed Trustee, Court-appointed attorneys and the work of the Court; was analyzing all pleadings and orders and delivering such documents to a law firm in New York. The Court finds that the 139 deletions for all practical purposes destroy any usefulness of said exhibits as the exhibits are not true and complete. The exhibits do, however, demonstrate that substantially none of the work which is set out in said exhibits was of any use, benefit or assistance to the Court-appointed Trustee, and no compensation as such can be allowed on the basis of said Exhibits C–1 through C–23.

13. The Court finds that Finimtrust engaged the services of the firm of Clearey, Gottlieb, Steen & Hamilton, hereinafter referred to as "New York Counsel" and paid them a fee in the amount of $77,600.00 and expenses in the amount of $6,495.78; that the principal duty of New York Counsel apparently was to analyze the reports made to them by Finimtrust's Oklahoma Counsel of court pleadings, applications, notices, hearings, orders of the Court and pleadings and briefs of Oklahoma Counsel. The Court finds that the professional services of New York Counsel were unnecessary in these proceedings and were not beneficial to the Court-appointed Trustee in his work of reorganization of the debtor estates, and therefore, no compensation can be allowed either as to fees or expenses.

14. The Court finds from the records and lack of records that any professional services rendered by New York Counsel are in the main reviews of the Court-appointed Trustee, his attorneys or of the Court itself, and that such services were wholly and completely unnecessary and of no benefit to the Trustee or this Court, and therefore, not compensable. The Court finds that New York Counsel did not appear to prosecute Finimtrust's claim for reimbursement of fees and expenses paid by Finimtrust to New York Counsel, and the sole evidence before this Court for reimbursement of fees and expenses is hearsay.

15. The Court finds that not less than 100 attorneys made appearances in this bankruptcy proceeding during the period of reorganization, with some attorneys representing substantial clients whose interest involved millions of dollars. Many attended numerous hearings, and as soon as their business was completed, they made no further appearances and left their affairs with regard to the reorganization in the hands of the Trustee, Court-appointed attorneys and the Court to effect fair, just and equitable treatment with regard to their client's interest; and with two or three exceptions said attorneys have made no

claims against the debtor estates for any professional services or expenses.

16. The Court finds that the Trustee and his Court-appointed attorneys encountered in these proceedings problems with literally hundreds of creditors, secured and unsecured, large and small, many of which never reached the courtroom except as required by statute as to publication, notice, hearing and disposition. Many of these proceedings, however, resulted in serious and protracted litigation both before the United States Magistrate, Charles R. Jones, serving as Special Master, and before this Court. Of all these numerous proceedings, no creditor or group of creditors, stockholder or groups of stockholders made any claim for their work and services for their clients, for attorneys fees or expenses, except those involved in these Findings of Fact and Conclusions of Law.

17. The Court finds there were over 5,600 separate claims, excluding the European claims, totaling $296,000,000. These claims of necessity were processed, and to these claims approximately 2,500 objections were filed by the Trustee, which were heard and determined to the end that all claims were resolved to a state of honesty and dependability, and that proper allocation of common stock in the reorganized corporation was made for all approved claims.

18. The Court finds that Finimtrust, through its Oklahoma Counsel, voluntarily participated, not on request of Court-appointed counsel, in the controversy between the Court-appointed Trustee and the Bank of the Southwest and acted solely on a purported money interest of Finimtrust therein. The time spent and professional work performed by Finimtrust's Oklahoma Counsel was wholly unnecessary and of no benefit to the debtor estates inasmuch as the Court-appointed counsel were fully and completely competent and capable to protect the interest of all debtor estates.

19. The Court finds that Finimtrust, through its Oklahoma Counsel, participated in some way in the controversy between the Court-appointed Trustee and the State of Ohio. Such services were purely voluntary, not requested by the Court-appointed attorneys, wholly unnecessary, of no use to the debtor estates and therefore, not compensable. Again it must be stated that Court-appointed attorneys were competent at all times to protect the debtor estates. The Court was never reversed by the United States Court of Appeals for the Tenth Circuit on appeal of any order or judgment entered by this Court, and there were numerous orders and many appeals.

20. The Court finds that Finimtrust's Oklahoma Counsel attended substantially all of the hearings relating to every aspect of the Court's operation, whether or not Finimtrust was directly or remotely interested. Oklahoma Counsel attended court hearings purely on a voluntary basis and in the nature of an overseer for Finimtrust. Such attendance was for the most part unnecessary and not useful to the debtor estates, and is not compensable as such.

21. The Court finds that in the initial distribution of cash to the European investors, Finimtrust and its counsel requested this Court to deduct from the distribution their claims for compensation and expenses, which request was denied on the ground that this money was pledged in the joint application and belonged to the investors and that no deduction could in honesty be made. The Court concluded that it had no right under the circumstances to distribute their money to anyone except the debenture holders. The same request is here being made that any fee allowed Finimtrust and its counsel be deducted from any share of money distribution now in the hands of the Court-appointed Trustee, recovered from the Trustee's plenary litigation against the former officers and directors of America, its original auditors, the stock brokerage firm and others, and the Court finds that this request should be granted.

■ 22. The Court finds that Finimtrust, through its Oklahoma Counsel and through its European officers, did aid and assist the Court-appointed Trustee and the Liberty National Bank in causing to be prepared and filed with the Trustee proper claims of each and every debenture holder or owner upon which to proportionately base the distribution of the $2,225,000 ordered by the Court to be paid to said debenture holders. For this service the Court finds that Finimtrust's Oklahoma Counsel is entitled to reasonable compensation for its beneficial services in the amount of $15,000.00, which sum is reimbursement to Finimtrust for fees paid.

■ 23. The Court finds that Finimtrust, through its Oklahoma Counsel, did participate, aid and assist the Court-appointed Trustee in processing the proposed settlement between the Trustee and the Class G stockholder-creditors and the unsecured trade creditors in that they would receive ⅓ and ⅔ respectively of the common stock of the reorganized corporation. Oklahoma Counsel also participated in the educational program of explaining the Trustee's Plan of Reorganization to the European debenture holders who were unfamiliar with United States bankruptcy proceedings, who were unfamiliar with the English language and who were scattered throughout Europe and elsewhere. For these services rendered, the Court finds that Finimtrust's Oklahoma Counsel is entitled to reasonable compensation for beneficial services provided in the amount of $15,000.00 as partial reimbursement to Finimtrust for fees paid.

■ 24. The Court finds that Finimtrust's Oklahoma Counsel has a claim for expenses in the amount of $7,925.03. It is difficult to separate expenses claimed for services not compensable and for services where compensation is allowed as set out in the two immediately preceding paragraphs, and the Court under the circumstances finds and allows reimbursement of expenses to Oklahoma Counsel in the amount of $4,500.00 as reimbursement to Finimtrust.

25. The Court finds that Finimtrust, through its European staff and office assisted the Court-appointed Trustee in many important matters preparatory to the $2,225,000 cash distribution. As the Overseas debenture bonds were bearer bonds, the holder in ordinary course of business was the owner, and these owners were scattered throughout Europe and other places, and consequently there was no list of the owners. Many of the owners were reluctant to disclose ownership. Finimtrust, working with and through the Court-appointed Trustee, worked out a successful plan of placing notices of the problem in six different newspapers, in six different languages in six different countries explaining the problem and the necessity of the holders and owners to surrender the bearer certificates in order to be added as a creditor of the debtor estates. Gathering the bonds, recording the owners thereof and cancelling the bonds constituted tremendous problems, which problems were properly, fairly and equitably worked out and the distribution properly made.

■ The Court finds that Finimtrust performed necessary and valuable services in agreeing with the Trustee on the Trustee's Second Amended Plan of Reorganization and in disseminating all necessary information to all former bondholders, now European creditors of the debtor estates, on the matter of the operation of the Plan of Reorganization; that they assisted in submitting to the various banks and to their customers the Plan of Reorganization, explaining what the plan meant to each creditor, the necessity of each creditor voting and the information that no vote was a vote against the Plan; that in all things they aided the Trustee to the end that the European voters fully and completely understood the Plan of Reorganization and voted overwhelmingly in favor of the Plan.

For all of the services enumerated hereinabove and all of the valuable serv-

ices not herein enumerated, the Court finds that Finimtrust is entitled to compensation for beneficial services in the amount of $61,325.40 and reimbursement of direct expenses in the amount of $62,267.37.

26. The Court finds that on January 16, 1973, the S.E.C. filed with the Court its report and recommendations with reference to attorneys fees and expenses and with reference to the claim for services rendered by Finimtrust and Finimtrust's expenses and for reimbursement of fees and expenses paid by Finimtrust to its privately employed attorneys. Said S.E.C. report and recommendations are in keeping with its duties under the Chapter X Reorganization Act. The Court is highly respective and appreciative of the report and recommendations of the S.E.C as submitted; however, the Court does not agree with the report in all things. The Commission is not in a position to see and judge on a day to day and month to month basis, as is this Court. The Court is more familiar with the work and services performed by all participants and is better able to judge and determine what services were helpful, necessary and beneficial and what services were not helpful or beneficial, and it is the sole duty and responsibility of the Court to allow and order such fees paid as he finds in good conscience should be paid and to deny such claims for fees and expenses when the services performed were not necessary, beneficial or helpful to the Trustee in reorganization.

*Findings of Fact Relating to the Claim of J. Vernon Patrick, Jr. and Marvin Cherner, Attorneys for Class G Stockholder-Creditors*

1. The Court finds that attorneys, J. Vernon Patrick, Jr., and Marvin Cherner, have filed a class action in this Court for fraud-tort damages against the former officers and directors of America, its accountants, stock brokers and other defendants, which case was assigned to the Multidistrict Panel, (Frank Sher, etc. v. Jack L. Clark, et al. Docket No. 55). About the same time and shortly before the statutory bar date fixed by the Court for filing claims, attorneys Patrick and Cherner filed a $100 million claim against the seven debtor estates on the basis of tort and fraud by the debtor estates. The attorneys filed legal briefs supporting their right to process the $100 million claim against the debtor estates and thereafter the Trustee concluded that the claim should be heard and determined as any other claim against the debtor estates, with the exception that this claim was subject to the duty of the Trustee and the Court to protect the trade and labor creditors.

2. The Court finds that the Trustee, the Trustee's counsel, the S.E.C. and the Court determined through the information provided by the certified public accounting firm of Arthur Young & Company at a cost to the debtor estates of over $400,000 that the seven debtor estates could and should be reorganized and that the stockholders should participate substantially in the reorganized corporation on the basis of the common stock ownership and/or the losses sustained by all stockholders, past and present as of July 22, 1970.

3. The Court finds that the claim of $100 million in damages did not make the stockholders entitled to any substantially greater share of the reorganized corporation, but simply meant that the registered stockholders as of July 22, 1970, would share their proportionate stock ownership with those stockholders who had bought and sold stock at a loss from the beginning of public stock sales to the time the bankruptcy complaint was filed July 22, 1970. America and Four Seasons Equity Corporation were the only two corporations of the seven debtor corporations which sold stock to the public.

4. The Court finds that by August 1, 1971, the Trustee, Trustee's counsel, the S.E.C. and the Court concluded that $\frac{1}{3}$ of the common stock of the reorganized corporation should be owned by the

stockholders and/or stockholder-creditors and ⅔ should be owned by the unsecured creditors, such as trade creditors, supply creditors and labor creditors, including Overseas debenture holders. The secured creditors' rights would be undisturbed.

5. The Court finds that attorneys Patrick and Cherner represented a class action for stockholders who claim to have lost substantial sums of money in trading in Four Seasons stock on the American Stock Exchange from 1968 to the date of bankruptcy. Said attorneys claimed that the Class G stockholder-creditors should share on the basis of 50 percent of all stock to be issued in the reorganized corporation, but agreed with the Trustee that ⅓ of the stock to the Class G stockholder-creditors in the reorganized corporation would be fair, reasonable, just and equitable.

6. The Court finds that the attorneys Patrick and Cherner claim they recovered for the Class G stockholder-creditors the approximate sum of $10.5 million worth of stock in the reorganized corporation (Anta Corporation), and the Court finds that such claim is without merit, for they made no such recovery. The Court further finds that attorneys Patrick and Cherner claim that 2 percent of the approximate $10.5 million of stock would net to them on a contingent basis $200,000 and more. The Court finds that this type claim is unrealistic and without merit; that their work and effort in agreeing with the Trustee and assisting the Trustee in presenting to all stockholders and creditors his Plan of Reorganization was of value to the Trustee and the reorganization of the debtor estates, but such services were of a reasonable value, hereinafter referred to.

7. The Court finds that the Trustee's Plan of settlement concerning the stockholders and unsecured creditors came on for hearing on November 2, 1971; that the Trustee took the witness stand and testified as to his proposed settlement with stockholders, including stockholders who claimed to have lost $100 million; otherwise the Class G stockholder-creditors, that said stockholder-creditors, past and present, who had dealt in the stock of American and Four Seasons Equity Corporation would collectively receive, and proportionately based upon their losses, ⅓ of the common stock of the reorganized corporation to be issued. Trustee also testified as to his many reasons for such a proposed settlement. Thereafter and on November 2, 1971, J. Vernon Patrick, attorney for the Class G stockholder-creditors, also took the stand and testified in support of the Trustee's proposed settlement and gave his many reasons why the settlement was fair and just and should be approved by the Court, the stockholder-creditors and the unsecured creditors.

8. The Court finds that on November 3, 1971, the Trustee's Second Amended Plan of Reorganization came on for hearing at which time the Trustee took the witness stand and testified concerning the prospects for reorganization of all of the debtor estates and the prospects for successful business operation; the condition of the various assets, the nursing homes and childcare centers; the need to retain sufficient capital for corporate reorganization and operation; the need to be free of court proceedings; the need of freedom to move with dispatch to utilize any tax forgiveness and tax benefits, and all other reasons the Trustee had to support the finding that his Plan was fair, just, equitable and feasible and why his Plan of Reorganization should be approved by the Court and submitted to the stockholder-creditors and unsecured creditors. Thereafter J. Vernon Patrick as one of the attorneys for the Class G Stockholder-creditors made a statement as to the many reasons for his support and endorsement of the Trustee's Plan of Reorganization and recommended that the Court approve the Plan and submit it to the creditors and stockholder-creditors for consideration and vote.

9. The Court finds that the Plan of Reorganization provided that the common stock of the reorganized corporation to be distributed would be distrib-

uted directly to each stockholder-creditor based upon his proportionate part of losses sustained; that representatives of this class had requested a sum of cash not to exceed $200,000, which the Court understood at the time was to be used as a war chest in the prosecution of the stockholders' class action against many defendants other than the debtor estates. The representatives of the class action have a right to apply to the Court for an allowance, and after proper notice and hearing giving the unsecured creditors and stockholder-creditors an opportunity to be heard pro and con, the Court may make such allowance or advancement in the nature of a loan to such representatives to aid them in the prosecution of said class action. The Court finds that should the Court have made such allowance or advancement that the same would be returned to the creditors of the debtor estate out of the first money had and received through such litigation by way of settlement or judgment. The Court finds that no part of said $200,000 referred to in said Plan was to be considered as a fee to J. Vernon Patrick and Marvin Cherner in the bankruptcy reorganization proceedings, and reference thereto is wholly and completely without merit. There is no statutory provision whereby the Court could possibly make such payment as attorneys fees and expenses at that time.

10. The Court finds that the above and foregoing paragraphs briefly state the professional services rendered by attorneys Patrick and Cherner in the interest of the debtor estates in reorganization. The Court finds that said attorneys were reasonable and fair; that they could have been obstructionists and could have delayed the reorganization of the debtor estates for a short period of time, but to have done so would not have been honest nor in the best interest of their clients, so they were duty bound in honor to assist as they did in the reorganization of the debtor estates.

11. The Court finds that shortly after the November 3, 1971, hearing on the Second Amended Plan, the Court approved said Plan, and on or about March 17, 1972, the S.E.C. furnished its statutory advisory report on the Trustee's Plan of Reorganization.

12. The Court finds that the Trustee, through its attorneys delivered said Plan of Reorganization (including the orders of the Court and report and recommendation of the S.E.C.) for consideration and vote, for or against, to approximately 12,000 interested creditors or Class G stockholder-creditors; that the vote approving said Plan was overwhelmingly in favor of the Plan to an approximate figure of 95 percent, far above the statutory minimum requirement; that the overwhelming acceptance of the Plan and the reorganization was completed in a minimum of 24 months from the date of June 26, 1970, when America's petition in Chapter X was filed.

13. The Court finds that it was the fairness, justice, equity and good sense of the Plan of Reorganization that brought about its adoption and favorable vote, and the work of the Court-appointed Trustee and his counsel, not the professional services of Finimtrust and its counsel nor the professional services of J. Vernon Patrick, Jr. and Marvin Cherner representing a class action for tort and fraud, though both did assist in an educational program regarding the Plan.

14. In support of their claim before the Court, attorneys Patrick and Cherner state that they have spent 1,450 hours working on this particular matter. At 8 hours per day this would represent 181 days or 6 months for 1 man or 3 months for 2 men. This seems to the Court a very long time to search through the records of the Trustee and any other records and to file the briefs which were filed with this Court, and the Court concludes that much of the time claimed to have been spent was spent by the attorneys in developing their class action suit before the Multidistrict Court.

15. The Court has allowed almost $1 million to Court-appointed Trustee and Court-appointed attorneys, which pay-

ment has the approval or acquiescence of the S.E.C. These dollars were well earned by the respective payees, and to allow the claims now before this Court of Finimtrust and attorneys Patrick and Cherner would make a total cost of in excess of $1.5 million, which the Court cannot in the light of all proof and circumstances allow. In other words, the two claims before this Court represent more than half as much as the Trustee and Court-appointed counsel have claimed.

16. The Court finds that attorneys Patrick and Cherner performed valuable professional services in connection with the Trustee's settlement of the class claim of $100 million; that they helped to resolve legal problems and supported the Trustee's finding that the Class G stockholder-creditors were entitled to collectively receive, proportionate to their losses, ⅓ of the common stock of the reorganized corporation; and for these professional services performed by attorneys Patrick and Cherner, the Court finds that they are entitled to a fee in the amount of $20,000 and reimbursement of expenses in the amount of $3,500.

17. The Court finds that attorneys Patrick and Cherner are entitled to compensation for their professional services rendered the debtor estates in connection with the approval of the Trustee's Plan of Reorganization. That they passed on their recommendation of the fairness, justice and equity of the Plan to the Class G stockholder-creditors, and that these services, both in and out of court, were valuable and necessary, and in this connection the Court finds that attorneys Patrick and Cherner are entitled to a fee of $20,000 and reimbursement of expenses in the amount of $3,500.

*Specific Findings*

1. The Court finds that the Trustee filed four plenary actions on order and direction of the Court against the former officers and directors of the debtor estates, its underwriting firm, its auditors and other defendants unnecessary to mention here.

2. The Court finds that as a result of the plenary actions above referred to the Trustee, through his attorneys, settled all such actions for a net sum of $1,500,000 cash and a withdrawal of in excess of $1 million in Class C (unsecured) claims against the reorganized corporation (Anta Corporation) held by the former officers and directors of the debtor estates or their families. In other words, the four plenary actions were settled for a net amount of $2,500,000 or more, which after proper notice and hearing, this Court approved.

3. The Court finds that with the $1,500,000 new cash on hand and the withdrawal of in excess of $1,000,000 in liabilities, the Trustee found that he could take from the general cash reserves $1,000,000, without impairing the operational efficiency of the reorganized corporation and create a fund of $2,500,000 for distribution to the stockholders and creditors as of February 15, 1973, on the basis of ⅔ of said sum going to the Class C creditors and ⅓ going to the Class G stockholder-creditors.

4. The Court finds that Robert E. Manchester and Robert C. Bailey of the firm of McClelland, Collins, Sheehan, Bailey and Bailey were charged with the responsibility, on order of the Court, to prosecute the four plenary actions, and that in performing their professional services, they expended substantial time and encountered expenses in prosecuting the actions and making possible the settlement hereinabove referred to, and their fees and expenses for recovering said sums of money shall first be deducted from the $2,500,000 above referred to.

5. The Court further finds that the fees for services and expenses herein allowed Finimtrust and reimbursement for fees and expenses hereinabove allowed its privately employed attorneys shall be deducted from any distribution

made out of the above referred to money and paid direct to Finimtrust and that the balance shall be distributed to the former owners and holders of European debentures, now stockholders in Anta Corporation as of February 15, 1973.

6. The Court further finds the Trustee should pay to J. Vernon Patrick and Marvin Cherner the amount of fees and expenses hereinabove allowed and that the same shall be deducted from the Class G stockholder-creditors' portion of the above described money and the balance distributed to the Class G stockholder-creditors, now stockholders in Anta Corporation as of February 15, 1973.

7. The Court funds that any and all claims for compensation and reimbursement of expenses of Finimtrust in excess of the sums hereinabove allowed should be denied. The Court further finds that any and all claims for compensation and reimbursement of expenses of attorneys J. Vernon Patrick and Marvin Cherner in excess of the sums hereinabove allowed should be denied.

### Conclusions of Law

1. The Court concludes that Finimtrust, an Indenture Trustee, together with its counsel, under affidavit required by Title 11 § 649 U.S.C.A. and under certain findings, are entitled to compensation for services rendered and reimbursement of proper costs and expenses incurred, according to Title 11 § 642 * U.S.C.A.:

"The judge *may allow reasonable compensation* for services rendered and reimbursement for *proper costs and expenses* incurred in connection with the administration of an estate in a proceeding under this chapter or in connection with a plan approved by the judge, whether or not accepted by creditors and stockholders or finally confirmed by the judge—

(1) by indenture trustees, depositaries, reorganization managers, and committees or representatives of creditors or stockholders;

(2) by any other parties in interest except the Securities and Exchange Commission; and

(3) by the attorneys or agents for any of the foregoing except the Securities and Exchange Commission."

2. The Court concludes that attorneys J. Vernon Patrick and Marvin Cherner, under affidavit required by Title 11 § 649 U.S.C.A. and under certain findings, are entitled to reasonable compensation for services performed which were beneficial to the administration and reorganization of the debtor estates and for reimbursement of proper costs and expenses incurred, according to Title 11 § 643 U.S.C.A.:

"The judge *may allow reasonable compensation* for services rendered and reimbursement for *proper costs and expenses* incurred by creditors and stockholders, and the attorneys for any of them, in connection with the submission by them of suggestions for a plan or of proposals in the form of plans, or in connection with objections by them to the confirmation of a plan, or in connection with the administration of the estate. In fixing any such allowances, *the judge shall give consideration only to the services which contributed to the plan confirmed* or to the refusal of confirmation of a plan, *or which were beneficial in the administration of the estate*, and to the proper costs and expenses incidental thereto."

3. Collier on Bankruptcy, Volume 6A, § 13.02 at page 903 states:

"When making his determination as to the allowances, the judge is confronted with two general questions: (1) Whether the services or expenses claimed are compensable or reimburse-

---

* Sections of Title 11 U.S.C.A., having previously been numbered in the 200 series, are now numbered in the 600 series, i.e. Sections 242 and 243 are now numbered 642 and 643, etc. These sections are referred to in Colliers on Bankruptcy by the earlier 200 series numbers.

able under Chapter X and (2) What the amount of the allowance, if any, should be. The burden is on each claimant to demonstrate that his claim is within the purview of the Statute and is entitled to allowance. The fact that no objections are made to claims does not relieve the judge of the responsibility of examining carefully all claims presented and constitutes no test of the value for compensability thereof."

 4. Both Sections 642 and 643 state that the court may allow reasonable compensation for services showing clearly that this matter is within the purview of discretionary power. In that regard, *Collier* states in Volume 6A, § 13.02 at page 900 that § 612 provides that the judge may examine and disregard any provision of any deposit agreement, proxy, power of attorney, mortgage, indenture, committee or other authorization for representation of a creditor or stockholder and may restrain the exercise of any power thereunder, which he finds not to be consistent with public policy. Thus, the reorganization judge has plenary power over all compensation and expenses, from whatever source payable, and the duties imposed by the Statute may not be neglected or delegated to other courts or agencies. In this connection, however, the recommendations of the Securities and Exchange Commission—acting in its advisory capacity under Chapter X—may be a valuable aid to the judge in making his determinations. While the recommendations of the Commission may not take the place of the court's independent judgment, yet they are entitled to weight as representing the expert opinion of a wholly disinterested agency skilled and experienced in reorganization affairs.

5. Collier on Bankrutpcy, Volume 6A, § 13.02 at page 904 further states:

"It has been said that even though an allowance seems somewhat overly liberal, the court of appeals will not interfere with it if it does not pass the limits of a reasonable discretion. The mere fact, however, that a claimant is a person to whom Chapter X permits compensation or reimbursement to be given does not mean that the claimant *must* be accorded an allowance. Nor does participation in the proceedings, however rightfully, create any absolute right to compensation or reimbursement. No one by retainer may bind the court to pay the agreed value of services rendered, and private agreements seeking to determine the compensation or expenses to be awarded are of no effect, and, indeed, are forbidden by law."

6. In the exercise of discretionary power *Collier* offers the following admonition at page 908 of § 13.02, Volume 6A.

"Nevertheless, the judge should endeavor to exercise fairly the discretion lodged in him with the double purpose of doing equity to the distressed debtor and its security holders and at the same time rewarding the proper activities of those participating in the proceedings."

and further at page 913:

"In considering particular allowances, the judge, in addition to the foregoing matters, should consider the extent of services contributed, the necessity therefore, the experience and the skill required in exercise, and the responsibilities undertaken. The principal test, however, is the benefit to the debtor's estate and the security holders generally."

7. The test, with regard to compensation and reimbursement of expenses of an Indenture Trustee, is set out specifically at page 948, § 13.06, Volume 6A of *Collier*. Compensation may be awarded to an Indenture Trustee in two situations:

(1) "In connection with the administration of an estate in a proceeding under this Chapter"; or

(2) "In connection with a plan approved by the judge, whether or not accepted by creditors and stockholders or finally confirmed by the judge."

If the claimant upon whom rests the burden of proof fails to bring himself within the scope of these categories, then an allowance must be denied.

8. It is likewise stated in *Collier*, Volume 6A, § 13.06 at page 949:

"In all cases, the activities for which an allowance is sought must have produced some 'benefit to the estate.'

(1) In connection with a submission by them of suggestions for a plan of proposals in the form of plans;

(2) In connection with objections by them to the confirmation of a plan; and

(3) In connection with the administration of the estate."

In fixing any such allowances, however, § 643 prescribes that:

"The judge shall give consideration only to those services which contributed to the plan confirmed or to the refusal or confirmation of a plan, or which were beneficial in the administration of the estate and to the proper costs and expenses incidental thereto."

A proper judgment will be entered accordingly.

## ORDER AND JUDGMENT

The Court, having filed herein on the 12th day of April, 1973, its Findings of Fact and Conclusions of Law relating to compensation for services rendered and reimbursement of expenses by Finimtrust, S.A., Indenture Trustee; reimbursement of attorneys fees and expenses paid by Finimtrust, S.A. to its privately employed attorneys; and compensation for attorneys fees and reimbursement of expenses for representation of Class G stockholder-creditors in the reorganization proceedings, and based upon said Findings of Fact and Conclusions of Law.

It is ordered, adjudged and decreed that the Trustee, James R. Tolbert, III, pay to Finimtrust, S.A. the total sum of $158,092.77 out of and from the special fund now in the possession of the Trustee created in part for the benefit of the Four Seasons Overseas, N.V. debenture holders.

It is further ordered, adjudged and decreed that the Trustee, James R. Tolbert, III, pay to J. Vernon Patrick and Marvin Cherner, attorneys for Class G stockholder-creditors, the sum of $47,000.00 out of and from the special fund now in the possession of the Trustee created in part for the benefit of the Class G stockholder-creditors.

It is further ordered, adjudged and decreed that all claims of Finimtrust, S. A. and claims of J. Vernon Patrick and Marvin Cherner over and above the sums hereinabove allowed and ordered paid be, and the same are hereby denied.