**ZEFFIRO, Jay A., Individually and on behalf of all other persons similarly situated**

v.

**FIRST PENNSYLVANIA BANKING AND TRUST COMPANY, a Pennsylvania Corporation.**

**SMITH, Isabella G., Bernard, Harry M., Jr., on behalf of themselves and all others similarly situated**

v.

**FIRST PENNSYLVANIA BANK, N. A., Capital First Corporation, First Pennsylvania Bank N. A., Appellants.**

No. 79–2259.

United States Court of Appeals, Third Circuit.

Argued Feb. 21, 1980.

Decided May 29, 1980.

Edward F. Mannino (argued), Mark J. Levin, Dilworth, Paxson, Kalish, Levy & Kauffman, Philadelphia, Pa., for appellant, First Pennsylvania Bank N. A.

Michael P. Malakoff (argued), Richard A. Finberg, Berger, Kapetan, Malakoff & Meyers, Pittsburgh, Pa., Joseph W. Anthony, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, Minn., Abraham C. Reich, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for plaintiffs-appellees, Jay A. Zeffiro and Harry M. Bernard, Jr.

Ralph C. Ferrara, Gen. Counsel, Jacob H. Stillman (argued), Associate Gen. Counsel, Elisse B. Walter, Asst. Gen. Counsel, Robert J. Mills, Atty., Securities and Exchange Commission, Washington, D. C., amicus curiae.

Before ROSENN and HIGGINBOTHAM, Circuit Judges and LAYTON, District Judge.*

## OPINION OF THE COURT

ROSENN, Circuit Judge.

The Trust Indenture Act of 1939, 15 U.S.C. § 77aaa et seq., regulates the terms of the agreement between debenture holders and the indenture trustee. This appeal presents to a United States Court of Appeals for the first time the question of whether the Act provides an injured investor with a cause of action in federal court against a trustee for breach of the agreement. We conclude, as did the district court, that a cause of action exists under the Act, allowing injured investors to bring suit in federal court.

### I.

Jay A. Zeffiro and Harry M. Bernard, Jr. each hold debentures issued in 1972 by Capital Equipment Leasing Corporation, a predecessor of defendant Capital First Corporation (Capital). The debentures were issued under a trust indenture which named First Pennsylvania Banking and Trust Company, a predecessor of defendant First Pennsylvania Bank, N.A. (First Pennsylvania), as indenture trustee. The indenture contained provisions mandated by the Act, detailing the duties of First Pennsylvania toward the debenture holders. In December 1976, Capital defaulted on its obligation to pay interest on the debentures and, sub-

sequently, filed a petition under Chapter XI of the Bankruptcy Act.

Zeffiro and Bernard filed separate suits in the United States District Court for the Eastern District of Pennsylvania, later consolidated, alleging that First Pennsylvania breached certain duties imposed upon it by indenture provisions which were required by the Act and seeking damages.[1] First Pennsylvania moved under rules 12(b)(1) and 12(b)(6) to dismiss the actions for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. First Pennsylvania contended that the Act does not expressly provide for a federal cause of action or for federal jurisdiction and that, therefore, the debenture holders' suit must be brought in state court. Judge Bechtle denied the motions, holding that there is a federal cause of action in favor of debenture holders for breach of the provisions of a trust indenture when those provisions are mandated by the Act. 473 F.Supp. 201 (E.D.Pa.1979). The district court and this court certified First Pennsylvania's right to appeal this interlocutory order under 28 U.S.C. § 1292(b).

### II.

Before proceeding to a discussion of the merits, it may be useful to briefly outline the structure and background of the Trust Indenture Act. A study was conducted by the Securities Exchange Commission (SEC) in 1936 which revealed widespread abuses in the issuance of corporate bonds under

---

* Honorable Caleb R. Layton, III, Senior United States District Judge for the District of Delaware, sitting by designation.

1. In particular, they allege that First Pennsylvania failed to segregate assets it received as a creditor of Capital within four months of Capital's default of payment in violation of an indenture provision required by section 311(a) of the Act, 15 U.S.C. § 77kkk(a); that First Pennsylvania failed to transmit certain reports to the debenture holders and made misleading statements in the reports it did transmit in violation of an indenture provision mandated by section 313, 15 U.S.C. § 77mmm; and that First Pennsylvania failed to disqualify itself in violation of a provision mandated by section

310(b), 15 U.S.C. § 77jjj(b), when a conflict of interest arose between it and debenture holders. In addition, plaintiffs allege that First Pennsylvania failed to notify the debenture holders of Capital's default in violation of a provision mandated by section 315(b), 15 U.S.C. § 77ooo (b); and that First Pennsylvania failed to take a number of actions after Capital's default, including actions to preserve the collateral securing the debentures as mandated by section 315(c), 15 U.S.C. § 77ooo (c). Plaintiffs also allege that First Pennsylvania breached indenture provisions not mandated by the Act, was negligent and violated its fiduciary obligations to the debenture holders.

indentures.[2] The main problems identified by the study were that the indenture trustee was frequently aligned with the issuer of the debentures and that the debenture holders were widely dispersed, thereby hampering their ability to enforce their rights. Furthermore, courts frequently enforced broad exculpatory terms of the indenture inserted by the issuer, which offered the investors less protection than the traditional standards of fiduciary duty.

Rather than allow the SEC direct supervision of trustee behavior and thereby provide for a more overt intrusion into capital markets, the Act establishes a standard of behavior indirectly by refashioning the form of the indenture itself. The Act is structured so that before a debt security non-exempted from the Act may be offered to the public, the indenture under which it is issued must be "qualified" by the SEC. The indenture is deemed "qualified" when registration becomes effective.[3] Before registration of the debenture is declared effective it must be qualified under the following conditions: (1) the security has been issued under an indenture; (2) the person designated as trustee is eligible to serve; and (3) the indenture conforms to the requirements of §§ 310–318, 15 U.S.C. §§ 77jjj–77rrr. Judge Bechtle aptly described the operative provisions of the Act, §§ 310–318, as follows.

Sections 310 through 318 form the core of the Act in that they outline the substantive duties that the indenture must impose on the trustee. These sections are of three types. The first type is proscriptive in nature, prohibiting certain terms.

For example, § 315, 15 U.S.C. § 77ooo (d), prohibits provisions in the indenture which would relieve or exculpate the trustee from liability for negligence. The second type of section is merely permissive in nature. An example of this type of section is § 315(a), 15 U.S.C. § 77ooo (a)(1), which states that the indenture *may* contain a provision relieving the trustee of liability except for the performance of such duties as are specifically set out in such indenture.

The third type of section, and the most important for our purposes, is mandatory and prescriptive in nature. These sections begin with the phrase "indenture to be qualified *shall* provide" or "shall require." An example of this type of section is § 311, 15 U.S.C. § 77kkk, which states that the indenture *shall* require the trustee to establish certain accounts for the benefit of bond holders in the event the trustee also becomes a creditor of the issuer and the issuer defaults on the bonds.

473 F.Supp. at 206.

■ The SEC has no enforcement authority over the terms of the indenture once the registration statement becomes effective, and it cannot issue a stop order for violation of indenture provisions by the indenture trustee. After the effective date of the indenture the SEC's role is limited to general rulemaking and investigation. 15 U.S.C. §§ 77ddd(c), (d), (e); 77eee(a), (c); 77ggg; 77sss; 77ttt. The Act contains criminal liability for certain willful violations and misrepresentations[4] and express

---

2. *See* Securities and Exchange Commission Report on the Study and Investigation of the Work, Activities, Personnel and Functions of Protective and Reorganization Committees, Part IV, Trustees Under Indentures (1937); *See also* Hearings on H.R. 10292 Before a Subcommittee of the Committee on Interstate and Foreign Commerce, 75th Cong., 3d Sess. 20 (1938).

3. § 309, 15 U.S.C. § 77iii. Securities not required to be registered under the 1933 Act are deemed "qualified" when the SEC permits the "application for qualification" to become effective. § 309(a)(2), 15 U.S.C. § 77iii(a)(2). The indenture must still conform to the requirements of §§ 310–318.

4. Section 325 provides:
    Any person who willfully violates any provision of this subchapter or any rule, regulation, or order thereunder, or any person who willfully, in any application, report, or document filed or required to be filed under the provisions of this subchapter or any rule, regulation, or order thereunder, makes any untrue statement of a material fact or omits to state any material fact required to be stated therein or necessary to make the statements therein not misleading, shall upon conviction be fined not more than $5,000 or imprisoned not more than five years, or both.
15 U.S.C. § 77yyy.

civil liability for any omission or misstatement in the filing documents.[5]

Enforcement of the terms of the indenture is left to the parties. The plaintiffs in this case contend that the Act necessarily allows for enforcement of the indenture in federal court to insure compliance with the Act. First Pennsylvania argues that, because the Act only mandates certain terms of the indenture in order for it to be qualified by the SEC, the remedy is contractual under state law and not one for federal jurisdiction.

### III.

The plaintiffs'[6] first argument is that the Act *expressly* creates a federal cause of action. In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court set out four factors to aid in determining whether a statute creates an *implied* federal cause of action.

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?

Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088. Since *Cort,* the Supreme Court has been reluctant to imply private rights of action under the securities laws.[7] Thus, plaintiffs' argument in favor of an *express* private right of action is an apparent attempt to escape the perceived strictures of the *Cort* analysis.

The cornerstone of plaintiffs' first argument in favor of an express federal cause of action is the jurisdictional provision of the Act, section 322, which provides:

(b) Jurisdiction of offenses and violations under, and jurisdiction and venue of suits and actions brought to *enforce any liability created by, this subchapter,* or any rules or regulations or orders prescribed under the authority thereof, shall be provided in section 77v(a) of this title.[8]

The argument is essentially that the mandated provisions of the indenture were "cre-

**5.** Section 323 provides in pertinent part:
(a) Any person who shall make . . . any statement in any application, report, or document filed with the Commission . . . which statement was at the time . . . false or misleading with respect to any material fact, or who shall omit to state any material fact required to be stated therein or necessary to make the statements therein not misleading, shall be liable to any person (not knowing that such statement was false or misleading or of such omission) who, in reliance upon such statement or omission, shall have purchased or sold a security issued under the indenture to which such application, report, or document relates, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading or of such omission. 15 U.S.C. § 77www.

**6.** Unless indicated otherwise the term "plaintiffs" refers to Zeffiro, Bernard and the SEC, *amicus curiae* in this case.

**7.** *See, e. g., Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62

L.Ed.2d 146 (1979); *Touche Ross & Co. v. Reddington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Piper v. Chris-Craft Ind., Inc.* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). In *Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074, 1088 (5th Cir. 1980), Judge Goldberg, in dissent, appropriately described the prevailing trend when he stated: "Only a cave dweller or other layman would not realize that there has been a remarkable change of attitude by the Supreme Court regarding the inference of private rights of action in the last fifteen years."

**8.** 15 U.S.C. § 77vvv(b) (emphasis added). 15 U.S.C. § 77v(a) states, in pertinent part:
(a) The district courts of the United States, and the United States courts of any Territory, shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and concurrent with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter. . . .

ated by" the Act, and thus section 322 confers federal jurisdiction in suits for breach of such indenture terms.

Two cases which have considered a private right of action under the Act[9] have accepted this argument, holding that section 322 expressly confers federal jurisdiction.[10] In *Morris v. Cantor*, 390 F.Supp. 817, 822 (S.D.N.Y.1975), the court reasoned that the Act provided an "indirect method of imposing nationally uniform and clearly defined obligations," and therefore the terms of the indenture were "created by" the Act and enforceable in federal court. In *In Re Equity Funding Corp. of America Securities Litigation*, 416 F.Supp. 161, 203 (C.D.Cal.1976), aff'd 603 F.2d 1353 (9th Cir. 1979), the court adopted the *Morris* rationale, holding that the Act established a basis for liability by mandating the terms of the indenture and therefore expressly provided for federal jurisdiction.

■ We decline to follow the approach of *Morris* because it was decided prior to *Cort* and thus the trial judge did not have the advantage of the thorough analysis enunciated by *Cort*.[11] There is not a bright dividing line between a test for express liability on the one hand and the *Cort* test for implied liability on the other. The *Cort* test is an interpretative tool to determine if a cause of action has been in fact created, not an alternative rule to be applied when a cause of action is not expressly stated under the statute. In other words, the *Cort* test is a means of determining whether a statute intended to create a cause of action. In *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979), the Court noted that "[t]he first three factors discussed in *Cort*—the language and focus of the statute, its legislative history and its purpose . . .—are ones traditionally relied upon in determining legislative intent." In fact, plaintiffs' argument that there is an express federal remedy—language of the statute, legislative history, consistency of a federal forum with the structure of the Act—are precisely the *Cort* factors.

■ Moreover, it is unlikely that section 322 in itself can provide the basis for federal jurisdiction. In *Touche Ross* the plaintiffs argued that section 17(a) of the 1934 Act, 15 U.S.C. § 78q(a), provided a private federal right of action because section 27 of the Act grants to federal district courts the exclusive jurisdiction of violations of the Act and suits to enforce any liability or duty created by the Act or the rules and regulations thereunder.[12] The Court reject-

9. In *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 426 n.17, 92 S.Ct. 1678, 1684, 32 L.Ed.2d 195 (1972), the Supreme Court left open the issue of whether a federal private right of action exists under the Act.

10. The district court in this case apparently also believed there was an express federal cause of action but proceeded to the implied cause of action *Cort* analysis at the urging of the parties, stating:

The *Morris v. Cantor* court apparently did not consider this issue to be one of an implied remedy, because it did not cite or rely on any cases preceding *Court v. Ash* [sic]. The *Morris* court simply determined that liability was "created" by the Act for violation of the indenture within the meaning of the jurisdictional grant. While we agree with that court's conclusion and approve of its analysis, this Court will apply the broader *Cort* analysis at the urging of the parties. 473 F.Supp. at 207 n.8.

In *Mathews v. Fisher*, [current binder] Fed. Sec.L.Rep. (CCH) ¶ 97,336 (S.D.Ohio 1978), the court found a private right of action under the Act after undertaking the *Cort* analysis.

11. Although *Morris* was handed down several months before *Cort*, the *Morris* opinion failed to mention *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974) (Amtrak Case), a case which foreshadowed the *Cort* test. It has been suggested, however, that the *Morris* opinion implicitly followed the *Cort* analysis by justifying its holding in terms of legislative intent and purpose. *See* Dropkin, *Implied Civil Liability Under the Trust Indenture Act: Trends and Prospects*, 52 Tul.L.Rev. 299, 324–25 (1978).

12. Section 27 provides in relevant part:

The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the

ed the argument, holding that section 27 "creates no cause of action of its own force and effect" but that "plaintiff's rights must be found, if at all, in the substantive provisions of the 1934 Act . . . ." 442 U.S. at 577, 99 S.Ct. at 2490. The operative language of section 322 of the Act is identical to that in section 27. Thus, it does not appear that section 322, by itself, can be read to expressly authorize federal jurisdiction.

Plaintiffs also contend that the Act expressly provides for a federal cause of action under 28 U.S.C. §§ 1331, 1337, which confer federal jurisdiction on all matters "arising under" federal law. They argue that because the Act mandates certain terms in the indenture, enforcement of the indenture arises under federal law. Plaintiffs rely, for example, on *International Association of Machinists v. Central Airlines, Inc.*, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963), where the Court held that an action to enforce the award of a board of adjustment established by a contract between an airline and the union representing its employees "arises under" federal law because section 204 of the Railway Labor Act, 45 U.S.C. 184, required that such a board be created.

■ We believe the "arising under" analysis of *International Association* is not helpful to the resolution of this case and was implicitly overruled by *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). In *Cannon*, 441 U.S. at 690–93 n.13, 99 S.Ct. at 1954–55, the Court characterized *International Association* as an implied private rights of action case, thereby indicating that the *Cort* test was the relevant inquiry. Justice Powell, in dissent, explained the reasoning as follows:

Where a court decides both that federal-law elements are present in a state-law cause of action, and that these elements predominate to the point that the action can be said to present a "federal question" cognizable in federal court, the net

rules and regulations thereunder, and of all suits in equity and actions at law brought to *enforce any liability or duty created by this*

effect is the same as implication of a private action directly from the constitutional or statutory source of the federal-law elements.

441 U.S. at 746 n.17, 99 S.Ct. at 1983. The relevant factors in the "arising under" inquiry are identical to those determining the existence of a private federal cause of action. Therefore, we turn now to the *Cort* analysis.

IV.

The *Cort* test is basically one of statutory construction. In *Transamerica Mortgage Advisors, Inc. v. Lewis, supra* 444 U.S. at 15, 100 S.Ct. at 245 the Court indicated "what ultimately must be determined is whether Congress intended to create the private remedy asserted, as our recent decisions have made clear." In *Touche Ross & Co. v. Reddington, supra* 442 U.S. at 575, 99 S.Ct. at 2489, the Court stated that in *Cort v. Ash* "the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." In *Cannon v. University of Chicago, supra* 441 U.S. at 694, 99 S.Ct. at 1956, the Court observed that Congress' failure to expressly consider private remedies does not preclude a holding that Congress intended to imply one. Thus, the *Cort* test is the lodestar for guiding a court in determining legislative intent. *National Sea Clammers Association v. City of New York*, 616 F.2d 1222, at 1228–29 (3d Cir. 1980).

The first question under *Cort* is whether the Act was enacted for the benefit of a special class of which debenture holders are members. 422 U.S. at 80–82, 95 S.Ct. at 2089. "That question is answered by looking to the language of the statute itself." *Cannon, supra* 441 U.S. at 689, 99 S.Ct. at 1953. An examination of the language of the Act and the surrounding legislative history makes it clear that debenture holders are the special beneficiaries of the Act.

*chapter* or the rules and regulations thereunder.

15 U.S.C. § 78aa (emphasis added).

Section 302 of the Act, 15 U.S.C. § 77bbb indicates that the purpose of the Act is to benefit the "national public interest and the interest of investors." In *In re Pittsburgh & Lake Erie Railroad Co. Securities & Antitrust Litigation*, 543 F.2d 1058, 1067 (3d Cir. 1976), a case dealing with a debenture trustee's standing to contest the settlement of a derivative suit, this court stated:

> [T]he evident intention of Congress, in passing the Trust Indenture Act . . . [was] to increase the protection of investors who depend upon the security which an indenture trustee holds in their interest.

*See also In re Multiponics, Inc.*, 436 F.Supp. 1072, 1075 (E.D.La.1976).

Furthermore, an examination of the legislative history of the Act illustrates that debenture holders are the primary beneficiaries of the Act.[13]  For example, both the Senate and House reports state that "enforcement of the provisions of the indenture may appropriately be left to the bondholders themselves. . . ."[14]  In supporting the pending act, Justice Douglas, then Chairman of the SEC, testified before a House Committee that "the philosophy of this bill is that in the drafting of these indentures the interests of the security holders have not been adequately represented."[15]  Just prior to Senate approval of the bill, Senator Wheeler noted that the Act "is of great moment to thousands of public investors   .   .   . ."[16]

Thus, it is evident that debenture holders are members of the special class to be protected by the Act. Congress sought to protect investors by prescribing mandatory terms of the indenture. Although this factor points towards a federal cause of action, the other factors must also be examined.[17]

■ The second part of the *Cort* analysis calls for an examination of the legislative history of the Act, 422 U.S. at 82, 95 S.Ct. at 2089. While we are not at liberty to find a cause of action solely from Congressional silence, *Touche Ross, supra* 442 U.S. at 571, 99 S.Ct. at 2486, such silence does not preclude finding a cause of action when the other elements of the *Cort* test are satisfied, *Cannon, supra* 441 U.S. at 694, 99 S.Ct. at 1956.[18]

The legislative history of the Act does not explicitly deal with the ability of investors to bring suit in federal court. As discussed *ante*, the Act was designed to regulate debt offerings in an indirect way. This sentiment was expressed in the Senate Report, which states:

> The Commission's work will be completed when the form of indenture has been qualified under the bill. . . . The Commission will have no powers with respect to the enforcement of the provisions

---

**13.**  *See, e. g.*, Hearings on H.R. 10292 before a Subcommittee of the Committee on Interstate and Foreign Commerce, House of Representatives, 75th Cong., 3d Sess. (1938), (Hearings) at 19–23, 25, 29, 57, 61; Senate Committee on Banking and Currency, Report on the Trust Indenture Act of 1939, S.Rep. No. 248, 76th Cong., 1st Sess. (1939) (Senate Report) at 2, 3, 8; H.R.Rep. No. 1016, 76th Cong., 1st Sess. (1939) (House Report) at 2, 24–25, 26, 27, 37; 84 Cong.Rec. 5019 (1939) (remarks of Sen. Wheeler).

**14.**  Senate Report at 8; House Report at 26.

**15.**  Hearings at 29.

**16.**  84 Cong.Rec. 5019 (1939). A further indication that Congress viewed a private right of action by the debenture holders is in § 315, 15 U.S.C. § 77ooo (e), a provision for the undertaking of costs. The section allows the parties to include a term in the indenture that in the event a debenture holder brings suit, the court,

in its discretion, may require a bond and assess costs. However, the section does not require costs and a bond in any suit instituted by debenture holders, owning in the aggregate more than 10 percent of the outstanding debentures. This provision plainly indicates that Congress contemplated suits by the debenture holders to enforce the agreement.

**17.**  The Supreme Court noted in *Cannon* that in all but one case it "has never refused to imply a cause of action where the language of the statute explicitly conferred a right directly on a class of persons that included plaintiff in the case."  441 U.S. at 690 n.13, 99 S.Ct. at 1954.

**18.**  *See National Sea Clammers Assoc. v. City of New York, supra* at 1229–30, where this court held that there was a private federal cause of action under § 505(e) of the Federal Water Pollution Control Act.

of the indenture. *After the indenture has been executed it will be enforceable only by the parties, like any other contract.*[19]

After the indenture is qualified, the active role of the SEC has been fulfilled and the plaintiff's remedy is to pursue his own action for breach of the indenture. As the Senate Report stated:

> The bill proceeds on the theory that the proper remedy is to correct these deficiencies in the trust indenture, and that the appropriate time to correct those deficiencies is before the bonds are offered in interstate commerce or through the mails. If this is done, it is believed *that the enforcement of the provisions of the indenture may appropriately be left to the bondholders themselves,* without continuing supervision by a governmental agency.[20]

Thus, the legislative history unequivocally advances the premise that the bondholders may bring a suit for breach of the indenture provisions. However, it does not specify the proper forum.

In *Transamerica Mortgage Advisors, Inc. v. Lewis, supra* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146, the Court faced the analogous issue of whether a private federal right of action could be found under section 215 of the Investment Advisors Act, 15 U.S.C. § 80b–15, where the legislative history also was silent as to the proper forum.[21] Section 215 provides that contracts whose formation or performance would violate the Investment Advisors Act "shall be void . . . as regards the rights of" the violator and knowing successors in interest.[22] The Court stated:

> In the case of § 215, we conclude that the statutory language itself fairly implies a right to specific and limited relief in a federal court. By declaring certain contracts void, § 215 by its terms necessarily contemplates that the issue of voidness under its criteria may be litigated somewhere.

444 U.S. at 18, 100 S.Ct. at 246. The Court considered that Congress could have intended claims under section 215 to be raised only in state court but rejected the contention stating, "we decline to adopt such an anomalous construction *without some indication that Congress in fact wished to remit the litigation of a federal right to state courts.*" *Id.* at 19 n.8, 100 S.Ct. at 247 (emphasis added). There was no legislative history showing that Congress sought to limit section 215 actions to state court so the court found a federal cause of action.

▮ From the above discussion there can be little question that the Trust Indenture Act allows for suits by debenture holders against the trustee for breach of the indenture. First Pennsylvania argues that such suits are limited to state, not federal, court. Under the holding of *Transamerica,* absent some indication that Congress intended to limit the litigation of the federally-created right to state court, the right is enforceable in federal court. We fail to find any such

**19.** Senate Report at 2 (emphasis added). *See also* House Report at 27.

**20.** Senate Report at 8 (emphasis added); *Morris, supra* 390 F.Supp. at 821. *See also* House Report at 26.

**21.** The Court also considered the issue of whether a private action exists under § 206 of the Investment Advisors Act, 15 U.S.C. § 80b–6, and concluded it does not because "§ 206 simply proscribes certain conduct, and does not in terms create or alter any civil liabilities." 444 U.S. at 19, 100 S.Ct. at 247.

**22.** Section 215, 15 U.S.C. § 80b–15, reads in part as follows:

§ 80b–15. Validity of contracts

(b) Every contract made in violation of any provision of this subchapter and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this subchapter, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision.

indication. To the contrary, the legislative history indicates that Congress sought to nationalize the issues of concern in the Act.[23] There is no indication whatsoever in any portion of the legislative history that Congress sought to restrict suits under the Act to state court.[24] Thus, we find that the second *Cort* factor points to the implication of a federal cause of action.

The third *Cort* factor asks us to determine whether a federal remedy is consistent with the overall structure of the Act. 422 U.S. at 84, 95 S.Ct. at 2090. In *Cannon* the Court noted that

> when [a private right of action] remedy is necessary or at least helpful to the accomplishment of the purpose, the Court is decidedly receptive to its implication under the statute.

441 U.S. at 703, 99 S.Ct. at 1961. There are several reasons why a finding of a federal cause of action is necessary and helpful to the purposes of the Act. First, the Act sought to attack a national problem in a uniform way.[25] Congress believed that the "inadequacy [of indentures] presents a national problem which cannot be dealt with effectively by the States. . . ."[26] A necessary means of facilitating the national uniformity goal of the Act would be through enforcement of the indenture in a federal forum. It is hard to believe that Congress would have established uniform standards to govern indentures and then paradoxically have allowed the application of those standards to depend on the law of the state of the suit.[27] The interpretation of the indenture provisions mandated by the Act does not depend on ordinary contract principles—the intent of the parties— but depends on an interpretation of the legislation. It would be contrary to the purposes of the Act to have the trustee held to certain standards in one state court and potentially different standards in another. Thus, federal court jurisdiction is necessary to achieve the uniform standards intended by the Act.[28]

Second, federal court jurisdiction is necessary and helpful to enforcement of the Act because there is no federal administrative enforcement. The district court in this case declared:

> If we were to agree with First Pennsylvania that the indenture holders are relegated to state court, we would create the anomalous situation of having a federally mandated right which is not enforceable

---

**23.** *See* Senate Report at 3; Hearings at 18, 31. For example, Commissioner Douglas at the House Hearings said "it is our conviction that there is only one way to deal with the problem and that is in a uniform way." Hearings at 31.

**24.** This court had occasion to examine the Act in *In re Pittsburgh & Lake Erie R.R. Securities and Antitrust Litigation, supra* 543 F.2d at 1058. The court, relying in part on the purposes of the Act, found that an indenture trustee had standing to contest settlement of a shareholders' derivative suit because "[a]ny other rule would be at variance with the evident intention of Congress, in passing the . . . Act . . ., to increase the protection of investors who depend upon the security which an indenture trustee holds in their interest." *Id.* at 1067. *See also Dropkin, supra,* n.11 at 330–33.

**25.** See n.23 *supra.* The dissent suggests that the Act intended to create uniform provisions in the indenture but not a uniform forum. We reject this view because it would be anomalous for Congress to mandate uniform provisions and then allow the interpretations of those provisions to vary with the choice of forum.

**26.** House Report at 25.

**27.** It is especially difficult to believe that Congress intended exclusive interpretation of indentures to be in state courts when it is realized that, at the time of the passage of the Act, 26 states had not had trusteeships under indentures filed with the SEC for the preceding two and one-half years. 84 Cong.Rec. 5021 (1939) (remarks of Sen. Miller). Thus, 26 states would have had little or no experience in the intricacies of indenture agreements. The proposed Federal Securities Code provides in § 1004(c) that mandated indenture terms "shall be interpreted, applied, and enforced exclusively as a matter of federal law." *Dropkin, supra* n.11.

**28.** Unless there is a federal cause of action it is unlikely the Supreme Court would have an opportunity to interpret the provisions of the Act. Thus, there could not be a resolution of conflicting state interpretations. *See generally* 28 U.S.C. § 1257.

*in any federal forum,* regardless of the amount in controversy or the exhaustion of state remedies.

473 F.Supp. at 209 (emphasis supplied). Courts have indicated they are more willing to find a private cause of action where agency resources are limited. *See Abrahamson v. Fleschner,* 568 F.2d 862, 872 (2d Cir. 1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978).[29] In this case the only enforcement of the Act would be in state courts if the federal courts do not entertain jurisdiction. Thus, we believe the lack of administrative enforcement makes federal jurisdiction necessary to effectuate the purposes of the Act.

Third, there is no indication in the legislative history that Congress was concerned with federal-state comity as it relates to the allocation of enforcement authority. Rather, the Act sought to apportion administrative and judicial authority. Therefore, the exercise of federal jurisdiction would not intrude on any congressionally recognized state authority and therefore is consistent with the Act.[30]

Fourth, the language of the jurisdictional section of the Act is fully consistent with the exercise of federal jurisdiction. The jurisdictional grant under section 322 gives federal and state courts concurrent jurisdiction over *all* liability "created" by the Act. To "create" means "to bring into existence; to make out of nothing and for the first time." Webster's Third New International Dictionary, Unabridged. The Congress "created" the terms of the indenture as

they did not exist before. First Pennsylvania argues that the language in section 322 about "creating" liability deals only with the express, and not any implied, liabilities of the Act, such as for misrepresentations in the filing documents. There is no support for this argument; the language of section 322 applies to "*any* liability created by this subchapter." (Emphasis supplied.)

The exercise of federal jurisdiction appears to be necessary to effectuate the purposes of the Act. At the very least, a federal cause of action is "helpful" to effectuate congressional intent.[31] Thus, this *Cort* factor points to the implication of a federal cause of action.

The final *Cort* factor turns on whether the matter is one which is traditionally relegated to state law. 422 U.S. at 84, 95 S.Ct. at 2090. First Pennsylvania argues that the complaint alleges nothing more than traditional state law causes of action sounding in negligence, breach of contract and breach of trust. It relies in part on *Sante Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), where the Court refused to create an implied cause of action under Rule 10b–5, 17 C.F.R. § 240.-10b–5, in favor of minority shareholders who were "frozen out" in a "short-form merger." The court reasoned that the regulation of fiduciary duties was a matter traditionally relegated to state law.

■ The *Cort* test of whether an area of law is traditionally regulated by the state

---

**29.** In *Transamerica, supra,* 444 U.S. at 15, 100 S.Ct. at 245, one of the crucial reasons for denying a private cause of action under § 206 of the Investment Advisors Act was that Congress specifically provided for administrative enforcement. In *Cannon, supra,* 441 U.S. at 706–08 n.41, 99 S.Ct. at 1962–63, the Court allowed a private right of action as helpful to the administrative scheme. The Court took note of the agency's support for a private cause of action. In this case the SEC, *amicus curiae,* supports a federal cause of action. In *Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074, 1084 (5th Cir. 1980), the fifth circuit recently denied a private cause of action under § 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793, because private enforcement was difficult to harmonize with an administrative enforcement network.

**30.** First Pennsylvania argues that there is not federal court jurisdiction over suits for breach of the indenture because the Act expressly provides for civil and criminal liability in certain instances. See n.4 and 5 *supra.* However, in *Cannon* the Court stated:

The fact that other provisions of a complex statutory scheme create express remedies has not been accepted as a sufficient reason for refusing to imply an otherwise appropriate remedy under a separate section.

441 U.S. at 711, 99 S.Ct. at 1965.

**31.** In *National Sea Clammers Ass'n v. City of New York, supra,* this court found a private right of action where it would be "helpful" to the statutory purposes.

does not preclude Congress from legislating in that area. Rather, the *Cort* test conveys the notion that courts should not assume Congress intended to regulate a previously state-controlled area. We do not believe that enforcement of the terms of an indenture mandated by the Act is a matter relegated to state law. It is unquestionable that Congress intended to legislate over trust indentures and deal with the problem on a national scale.

Furthermore, the issues in this case do not involve familiar principles of contract law. The interpretation of the mandated terms in the indenture agreement will not depend on the intent of the parties but on the meaning of the Act. The interpretation of agreements containing federally mandated provisions is not a matter relegated to state law.[32] The subject matter of this suit, the construction of a federal statute, is quite different than the traditional state concern for fiduciary duties found in *Sante Fe Industries*. Thus, this *Cort* factor also supports finding a federal cause of action.

There is no need to weigh the *Cort* factors where they all indicate that a federal cause of action exists under the Act. *Cannon*, 441 U.S. at 709, 99 S.Ct. at 1963. The plaintiffs are members of the protected class, congressional intent indicates the availability of a federal forum, a federal cause of action is consistent with the Act and federal jurisdiction would not intrude on a matter of state concern. The language, purpose, and legislative history of the Act all indicate a congressional intent to allow private victims to sue in federal court for breach of mandated indenture terms.[33]

## V.

We hold that the Trust Indenture Act provides injured debenture holders with a federal cause of action for the breach of terms mandated by the Act. The judgment of the district court will be affirmed.

Costs taxed against appellant.

LAYTON, District Judge, dissenting.

I agree with the majority that no federal cause of action exists based upon the mean-

---

**32.** *See, e. g., International Ass'n of Machinists v. Central Airlines, Inc., supra*, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67.

**33.** First Pennsylvania argues that the latest Supreme Court securities cases, denying private rights of action, preclude such an action in this case. We believe the Trust Indenture Act is very different and that the recent cases are easily distinguishable.

In *Touche Ross, supra*, 442 U.S. at 560, 99 S.Ct. at 2479, the Court held there was no private action under § 17(a) of the 1934 Act. The issue concerned whether customers of brokerage firms have an implied cause of action against accountants who audit the reports for misstatements in the reports. There were many reasons why the private action was denied, including the following. First, the parties filed a state court action almost identical to the federal action except § 17(a) was not specified. Second, § 18(a) of the 1934 Act created an express remedy, with a reliance requirement for the same activities sought to be covered by § 17(a). Third, § 17(a) does not confer rights or proscribe conduct. Fourth, the intent of § 17(a) was evident from its face—a record-keeping provision. Fifth, § 17(a) protects investors by providing an early warning system to the SEC to take appropriate action to forestall insolvency. Sixth, the legislative history of § 17(a) was silent and the plain language

weighed against implication of a private remedy.

In *Transamerica, supra*, 444 U.S. 11, 100 S.Ct. 242 after finding an implied right of action under § 215, the Court held there was no such right under § 206 of the Investment Advisors Act. The issue concerned whether there was a derivative cause of action on behalf of a trust against the trustees, the trust's investment advisor and two corporations affiliated with the latter. The Court denied the action for damages for the following reasons. First, the claim was similar to a claim of breach of fiduciary duties, held not to support an implied cause of action in *Sante Fe Industries, Inc. v. Green, supra*, 430 U.S. at 462, 97 S.Ct. at 1292. Second, the SEC was specifically granted enforcement duties under § 209 of the Act, the only enforcement provision. Third, Congress expressly provided judicial and administrative mechanisms for enforcing compliance with the Act. Fourth, the legislative history expressly showed an intent not to create a private right of action.

Our earlier discussion manifested that none of the reasons for denying a private cause of action in *Touche Ross* and *Transamerica* are present in this case. The statutory scheme at issue here unmistakably allows for federal jurisdiction over private causes of action.

ing of the word "create" in Sec. 322 of the Act here under consideration. However, I respectfully dissent from the opinion of the majority, concluding that a private right of action may be implied.

One of the basic questions is the effect of *Touche Ross* upon *Cort*. Does it not, essentially, render Congressional intent the sole criterion for implying a private cause of action?

Nor am I persuaded by the reliance of the majority on *Transamerica Mortgage Advisors, Inc.* as authority for the proposition that a private cause of action can be implied under the language of this Act. That case involved an unusual provision in the Investment Advisors Act, not at all analogous to this case, wherein Congress created a right of action on behalf of investors wherein certain types of contracts might be declared void. The majority, relying on this provision and citing certain language of Commissioner Douglas during the Committee hearings,* reached the conclusion that a private right of action was intended.

I am unable to agree. Not only, as just stated, was the provision of the Act declaring certain types of contracts void completely foreign to the provisions of the Act here under consideration but, with deference, I submit that the circumstantial evidence to be gleaned from the Committee hearings preceding the passage of this Act points more strongly to an intention on the part of Congress to use the state, not federal, courts for a remedy. In this connection, I quote from an article in the Tulane Law Review by Charles E. Dropkin, entitled *Implied Civil Liability Under the Trust Indenture Act.* The language concerns not only the Act under consideration, but certain other language of Commissioner Douglas at the same hearings.

When Congress enacted this key section, it intended *neither to allow bond-*

*holders resort to a federal forum* nor to federalize the prudent man concept. It simply sought to mandate that a particular private contract, namely the indenture, should now contain a provision establishing the appropriate standard of trustee conduct during default administration. As Commissioner Douglas testified: 'The indenture, after it has been 'qualified' under this statute, will be enforceable, in the same manner as any other contract is enforceable, in the same manner that indentures *presently* executed are enforceable'. An indenture is nothing more than a private contract and should be treated as such. *Since ordinary contract disputes are resolved in state courts under state law, so also should indenture disputes continue to be settled.* 52 Tul.L.Rev. 299, 323 (1978) (My emphasis).

This conclusion is strongly fortified by placing the testimony of Commissioner Douglas, and particularly his use of the word "presently", in the context of the time of these Congressional hearings, which was 1938, over forty years ago. Unlike the present, there was then no controversy in the courts as to the proper forum in which indenture abuses should be resorted to. Legal thinking simply assumed that the state courts were the proper forum and an examination of a number of cases seems to fortify this conclusion. *E. g., Gouley v. Land Title Bank & Trust Co.,* 329 Pa. 465, 198 A. 7 (1938); *Fleener v. Omaha Nat's Co.,* 131 Neb. 253, 267 N.W. 462 (1936); *Newhall v. Norristown Trust Co.,* 280 Pa. 195, 124 A. 337 (1924).

For these reasons, I feel that the conclusion of the majority as to the existence of Congressional intent is quite inconclusive. However, even if we employ the remaining *Cort* considerations as a means of inferring the presence of such intent, the result is, at best, ambiguous. Although plaintiffs here

---

* The majority has cited testimony before Congress by Commissioner Douglas indicating that the Act aimed at dealing with the problem "in a uniform way". Slip op. at 299 n.23. In view of the structure of the Act, however, I think it likely that Commissioner Douglas was stressing the importance of creating uniform provi-

sions in the *indenture,* not a uniform *forum.* The Act, by its terms, requires certain uniformity among the contracts governing debentures. Indeed, certain legislative history quoted by the majority supports the proposition that the focus of the Act is the content of the indenture. *See* slip op. at 297.

are of the class for whose benefit the statute was passed, and it is consistent with the legislative intent to imply a right of action in plaintiffs, the remedy is traditionally a matter of state law.

Under these circumstances, and in the light of the apparent intention of the Supreme Court to limit sharply the doctrine of implication, *see Touche Ross & Co. v. Reddington, supra,* I would hold that no federal cause of action is implied under this Act.