### In the Matter of MULTIPONICS INCORPORATED, Debtor.

### No. 71–218.

United States District Court,
E. D. Louisiana,
Section "C".

July 13, 1977.

---

17. *United States v. Marxen*, 1939, 307 U.S. 200, 59 S.Ct. 811, 83 L.Ed. 1222.

Peter J. Butler, New Orleans, La., for William W. Herpel, Trustee.

George J. Wade, Lansing R. Palmer, Shearman & Sterling, New York City, William M. Meyers, Stephen T. Victory, Liskow & Lewis, New Orleans, La., for Citibank, N.A., Indenture Trustee.

George W. Pigman, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., Thad Grundy, Hutcheson & Grundy, Houston, Tex., and George A. Kimball, Jr., Peter A. Feringa, Jr., New York City, for Machinery Rental, Inc. and Carl Biehl.

David L. Stone, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for William J. Casey.

Carl J. Schumacher, Jr., New Orleans, La., for Alfred J. Moran.

ALVIN B. RUBIN, District Judge:

Citibank is the trustee under an indenture dated October 15, 1968, between it and Multiponics. Pursuant to the indenture, Multiponics issued $3,500,000 in 7½% subordinated debentures, which are due October 1, 1983. Citibank retained Shearman & Sterling of New York, and Liskow & Lewis of New Orleans, to advise and represent it generally in connection with Multiponics' Chapter X reorganization proceeding. These counsel have participated and continue to participate actively in the reorganization proceeding. In addition, in the fall of 1973, Citibank retained, as special counsel on the law of the State of Arkansas, the firm of Smith, Williams, Friday, Eldredge & Clark, Little Rock, Arkansas.

Citibank now seeks reimbursement for services rendered by counsel and for necessary disbursements incurred in rendering such services during the reorganization proceedings. While various applications for interim allowances have been filed, for reasons set forth in my opinion dated July 1, 1977 with respect to the reorganization trustee's fees, I will consider the total allowance for the entire proceeding.

The total amount sought is $576,123.25 in counsels' fees and costs. The fees of the trustee, trustee's counsel, and all other reorganization expenses and all of the claims of unsecured creditors must be satisfied out of a fund amounting to $2,308,314. From this fund the following administrative expenses have been allowed, or are likely to be allowed:

| | |
|---|---|
| Trustee | $ 135,000.00 |
| Attorney for trustee | 300,000.00 |
| Auditor (not yet considered; amount sought) | 58,256.09 |
| | $ 493,256.09 |

The claims of unsecured creditors amount to a total of approximately $600,000; after this come the claims of Citibank's clients, $3,500,000; and, then, there are claims amounting to $3,200,000 which have been subordinated but are, nevertheless, due. Thus the funds on hand, after paying these administrative expenses, about $1,815,000, (less the amount allotted to Citibank), will satisfy only a fraction of the total claims.

Some of the services rendered by Citibank benefited only the debenture holders. Others were of benefit to the reorganization trustee or the reorganization estate. They were rendered over a period of six years and, as directed by the Court, Citibank has diligently attempted to determine the amounts of time its counsel spent in various aspects of this lengthy proceeding.

Citibank's counsel have throughout been able and diligent. Although this case was

assigned to other judges prior to me, the services rendered after the case was allotted to me in 1976 have in every respect been of the highest quality. My duties with respect to the estate require me to comment on the amount of the claim, and to approve only a fraction of the sum sought as a charge against the estate, but these comments are in no way intended to qualify the praise I have already expressed.

## I.

In 1938 Congress considered several bills to amend the Securities Act of 1933, which provided for regulation of trust indentures, to increase the responsibilities of indenture trustees, especially where the obligor on the debentures entered insolvency proceedings. These bills resulted in the passage of the Trust Indenture Act of 1939, 15 U.S.C. § 77aaa, et seq., (the "Act").

█ To provide more adequate protection for debenture holders with respect to issuers who became insolvent, the Act requires every qualified indenture [1] to impose certain duties on an indenture trustee in the event of the obligor's default under the terms of the indenture, for example, by the commencement of a reorganization proceeding. Section 315(c) of the Trust Indenture Act of 1939, 15 U.S.C. § 77ooo (c), in particular, requires indentures to provide (and this October 15, 1968, indenture does provide) that, upon the obligor's default, as defined in the indenture, the trustee is to exercise:

.   .   .   such of the rights and powers vested in it by such indenture, and to use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

Accordingly, Citibank was required to act in accordance with the "prudent man" standard. Citibank conducted an independent and vigorous investigation into the reasons for the debtor's collapse. As a direct result of those efforts, the reorganization trustee was directed to bring an action against the former officers and directors of the debtor. A trial resulted in which counsel for the trustee acted as trial counsel, but Citibank's counsel played a major role in preparing for the trial and attended throughout; both Citibank's New Orleans counsel and New York counsel were in attendance. As a result of the trial, the claims of those officers and directors and the entities controlled by them were subordinated to the claims of the debenture holders and the trade creditors. Citibank's active participation in preparation for the trial was necessary and was of assistance to the trustee's counsel. But I do not believe that the personal attendance at the trial of New York counsel was required, and I believe that, throughout this case, in an effort to satisfy its duties to the debenture holders, Citibank rendered services far beyond the amount that benefited the reorganization trustee.

Citibank's initial vigorous representation of the debenture holders did alter the course of the proceeding in its earlier stages. Citibank objected to the claims that were eventually subordinated and, in the face of continuous opposition by other creditors, pressed for a speedy hearing on its objections. Judge Christenberry upheld Citibank's standing to object and granted the requested hearing. When that hearing was later consolidated for trial with the reorganization trustee's plenary action, Citibank was prepared to prove its case. Nevertheless, counsel for the reorganization trustee had a duty to act as lead trial counsel, and he, in fact, conducted the bulk of the examination of witnesses. Citibank's counsel assisted only in a relatively minor way in the examination of witnesses; they did introduce the majority of documents into evidence in what was, in large part, a "document" case, but these had been prepared and marshalled in advance of the trial.

In other facets of the reorganization, Citibank monitored the proceedings and participated actively in objecting to the claims of certain secured creditors whose claims, if

---

1. For reasons that do not affect this opinion, the indenture issue was never qualified.

sustained, would have seriously depleted the estate funds available for distribution to the debenture holders and other creditors.

## II.

■ The indenture trustee is not a creditor, did not risk its own funds and is not reaping the rewards of any investment in an issuer. It is in the service business and provides services for a fee. Accordingly, and in keeping with the policy articulated in Section 315(c) of the Trust Indenture Act of 1939, 15 U.S.C. § 77ooo(c), that indenture trustees take an aggressive role in Chapter X proceedings, Congress included in its revision of the Bankruptcy Act a new Section 242, which provides:

> The judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in connection with the administration of an estate in a proceeding under this chapter . . .
> (1) by indenture trustees . . .
> (3) by the attorneys or agents for any of the foregoing . . .

11 U.S.C. § 642.

Unlike claimants mentioned in Section 243, 11 U.S.C. § 643, those creditors and stockholder representatives specified in Section 242 need not show that their services are "beneficial to" the administration of the estate. Congress acknowledged that indenture trustees benefit the reorganization of an estate by their very participation under fiduciary standards. This does not mean, however, that Section 242 creditors are given carte blanche. They are to be reimbursed only for "proper costs and expenses incurred in connection with the administration."

The indenture trustee is, of course, free to seek in its contract with the obligor and the debenture holders additional provisions that would give it some promise of reimbursement for its expenses and compensation for those services not compensable from the estate. Typically, indentures provide that such reimbursement and payment shall, in the first instance, be made by the obligor. If payment is not made by the obligor, the indenture trustee has a lien on any moneys held by it for the account of the debenture holders (except those held in trust for payment of principal and interest upon the debentures), and has in addition a lien on all moneys collected by the indenture trustee from the obligor's estate for the benefit of the debenture holders.

■ The 1938 amendments go beyond prior standards and permit the allowance of costs not only for services that benefit the estate, but also for proper costs in connection with administration. However, it is implicit in the text of Section 242 that the reorganization estate is not responsible for services that are purely of benefit to the debenture holding creditors. Pre-amendment Section 242 cases had denied compensation for services held to be duplicative of the reorganization trustee's efforts, and some post-1938 cases did appear to articulate the same rule. See, e. g., *Dickinson Industrial Site v. Cowan*, 1940, 309 U.S. 382, 60 S.Ct. 595, 84 L.Ed. 819; *In re Porto Rican American Tobacco Co.*, 2d Cir. 1941, 117 F.2d 599; *In re Prudence Bonds Corp.*, 2d Cir. 1941, 122 F.2d 258. Thus, in *Dickinson*, the Court said:

> The history of fees in corporate reorganizations contains many sordid chapters. One of the purposes of § 77B was to place those fees under more effective control. Buttressing that control was § 77B(c)(9) which, together with former § 24(b), made appeals from compensation orders discretionary with the appellate court. We should not depart from that policy in absence of a clear expression from Congress of its desire for a change. Fee claimants are either officers of the court or fiduciaries, such as members of committees, whose claims for allowance from the estate *are based only on service rendered to and benefits received by the estate.* (Emphasis supplied)

But, as set forth in Collier on Bankruptcy, the test under Section 242, as amended

> . . . should not be so narrowly applied as it was under former § 77B. Nor

is the test quite the same as it is in ordinary bankruptcy. Committees, individual creditors and stockholders, and other parties in interest *may in the course of the reorganization perform valuable services in connection with the administration of the estate, apart from the plan, and this is* recognized by §§ 242 and 243. In addition, activities which *benefit the estate* are not to be restricted merely to those which relate to the successful consummation of a plan, as was largely the case under § 77B. . . . This serves to insure *the vigorous representation of all security holders and the protection of minority groups.* Some courts, nevertheless, still display a tendency to find no compensable benefit where there is what is termed a 'duplication of services' and to use this broadly as a basis for refusing allowances. *While it is true that in a particular case there may be unnecessary duplication which would not be compensated or reimbursed, yet the courts should be wary lest reliance on the rule, particularly undiscriminating as applied under former § 77B, discourage the participation by minority groups and individuals which Chapter X invites.* (Emphasis supplied)

6A W. Collier, Bankruptcy ¶ 13.02 at pp. 913–16 (14th Ed. 1972).

█ Various types of activities have been undertaken by Citibank as indenture trustee, some clearly beneficial to the estate, such as the investigation of the pre-petition activities of the corporate insiders, and others primarily of benefit to the debenture holders, such as the monitoring function and the advice rendered by the indenture trustee to the debenture holders. These services to debenture holders are services for which the issuer contracted, but it does not follow that they are to be paid for by the estate of the debtor. Such services are not rendered under the supervision of the bankruptcy court. No application is made to it for advance approval; it has no power to regulate their scope. The indenture trustee alone determines what shall be done and how much of it is required. It does whatever it deems necessary to protect the debenture holders. Whether and to what extent it should be paid is a matter between it and the debenture holders.

█ Services that are solely or primarily for the benefit of creditors are not proper costs to the estate even under Section 242. As suggested by Collier, the estate should repay "valuable services in connection with the administration of the estate *apart from the plan*" (emphasis supplied) as well as services that benefit the estate. The proper tests is that adopted in *In re Yale Express System, Inc.*, S.D.N.Y. 1968, 281 F.Supp. 76, which found the services that were compensable those that were "reasonably necessary for administration and protection of the trust." 281 F.Supp. at 79.

█ Even in respect to those services, the indenture trustee has a duty to minimize expenses. If advice and services of a nature available only in New York are required, then the indenture trustee should seek services there and pay the going New York rate for them. But where competent and reliable counsel can be found at a lower rate in the forum of the reorganization court, and hourly charges, travel expense and other costs can be minimized by employing local counsel, it is the duty of the indenture trustee to employ local counsel so as to minimize expenses. If it chooses not to do so, then it is the duty of the court to charge the estate only with the expense that would have been incurred for services of a kind and quality reasonably necessary.

█ I have considered all of the factors set forth in the opinion with respect to the reorganization trustee's fee because they are equally applicable here. I have considered also the amount of assets on hand and the extent the services rendered either benefited the estate or were proper costs in its administration. Under these tests, the amount that will be recognized as due Citibank from the estate is $150,000 total, to include services and expenses.