## In re REVERE COPPER AND BRASS, INCORPORATED, et al., Debtors.

### Bankruptcy Nos. 82 B 12073 to 82 B 12086 (PBA).

United States Bankruptcy Court, S.D. New York.

May 20, 1986.

Curtis, Mallet-Prevost, Colt & Mosle by John P. Campbell, New York City, for the U.S. Trust Co. of New York.

Weil, Gotshal & Manges by Stephen Karotkin, New York City, for Revere Copper and Brass, Inc.

MEMORANDUM DECISION ON THE APPLICATION OF UNITED STATES TRUST COMPANY OF NEW YORK, SUCCESSOR INDENTURE TRUSTEE, FOR ALLOWANCE OF COMPENSATION AND DISBURSEMENTS AND FOR REIMBURSEMENT OF COUNSEL FEES AND DISBURSEMENTS

PRUDENCE B. ABRAM, Bankruptcy Judge:

On October 27, 1982, Revere Copper and Brass Incorporated ("Revere") and a number of its subsidiaries (collectively, the "Debtors"), each filed a petition for reorganization under Chapter 11 of the Bankruptcy Code (the "Code"). Two other subsidiaries thereafter filed their Chapter 11 petitions on May 31, 1983 and November 28, 1983, respectively. By order of the court dated July 30, 1985, the Debtors' Amended Joint Plan of Reorganization (the "Plan") was confirmed. This court directed that final applications for allowance of compensation and reimbursement of expenses be filed.

On September 11, 1985, the United States Trust Company of New York ("U.S. Trust") filed an application for allowance of compensation and disbursements and for reimbursement of counsel fees and disbursements ("U.S. Trust Application"). U.S. Trust is successor Indenture Trustee under the December 15, 1967 indenture

("Indenture") for the 5½% convertible subordinated debentures ("Debentures") of Revere. In its application, U.S. Trust requests an allowance of compensation in the aggregate amount of $441,429.00, for the period October 27, 1982 through August 9, 1985, including reimbursement of expenses of $26,540.54. Included in the request of U.S. Trust is a request for an allowance of compensation for services rendered to it by Curtis, Mallet-Prevost, Colt & Mosle ("Curtis") in the amount of $373,429.00 and reimbursement of Curtis' expenses in the amount of $24,758.59. The balance requested in the U.S. Trust Application consists of compensation for and reimbursement of expenses of U.S. Trust in its capacity as Indenture Trustee.

It is the U.S. Trust's assertion that it is entitled to compensation under Bankruptcy Code §§ 503(b)(3)(D) and 503(b)(5) and that it is entitled to reimbursement in respect of its counsel fees under Code § 503(b)(4).[1] The basis for the U.S. Trust assertion of entitlement to compensation is that the services it rendered and the services rendered by Curtis made a "substantial contribution" to the reorganization cases.

On November 22, 1985, Revere filed an objection to the U.S. Trust Application. The objection states, *inter alia,* that:

"The services rendered by U.S. Trust and by Curtis are not compensable by the estates under the terms and provisions of the Bankruptcy Code because neither U.S. Trust nor Curtis made any contribution to the Chapter 11 cases, much less a substantial contribution. In fact, the activities engaged in by U.S. Trust and Curtis * * * resulted in a substantial detriment to the reorganization cases at the expense and to the prejudice of all parties in interest, particularly the holders of Subordinated Debentures whom U.S. Trust and Curtis purportedly represented. A review of the expenses incurred by U.S. Trust and the services rendered by Curtis clearly demonstrates that their efforts were nothing more than frivolous make work projects that served only to direct energies from the reorganization effort and generate unnecessary attorneys' fees and expenses." Revere Objection at ¶ 6.

The objection stated that the only services for which compensation was even arguably appropriate were those relating to the drafting of the new indentures in respect of the debentures to be issued pursuant to the Plan. Although not so stated in the objection, counsel for Revere at oral argument conceded that some portion of the fees sought by U.S. Trust itself were appropriate expenses of administration.

In apparent anticipation of Revere's objection, U.S. Trust filed two supplemental affidavits dated November 22, 1985 in support of its application, one from John P. Campbell, a member of Curtis, and one from Gerald E. Chelius, a Vice President of U.S. Trust. Each of the supplemental affi-

---

1. Code §§ 503(b)(3)(D), 503(b)(4) and 503(b)(5) in relevant part provide:

"(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

* * * * * *

"(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

* * * * * *

"(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; or

* * * * * *

"(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

"(5) reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a case under chapter 9 or 11 of this title, based on the time, the nature, the extent, and the value of such services other than in a case under this title * *."

davits provides a further breakdown of fees and disbursements. The Campbell affidavit attempts to categorize the charges for legal services with respect to the various aspects of the proceeding with which Curtis was involved.[2] From this supplemental affidavit it appears that approximately 8% of Curtis' time, aggregating $29,875 in time charges, was spent preparing the new indentures.

The Chelius affidavit provides the court with the Successor Indenture Trustee's Time Long ("Time Log"). The Time Log details the specific services rendered in connection to matters related to these Chapter 11 proceedings. The breakdown is by date, amount of time, description of services, and the name of person rendering the services. In addition, a brochure showing U.S. Trust's standard charges for various services is attached an an exhibit.

 The court finds Revere's objection to be well taken on the whole. Generally speaking, the services rendered by U.S. Trust and Curtis are not compensable by the estates under Code § 503(b)(3), (4) or (5) because U.S. Trust and Curtis did not in fact make a substantial contribution to the case. At this juncture, the court must note a crucial distinction between the entitlement of U.S. Trust to reimbursement of its

expenses, including attorney's fees, under the Indenture and under Code § 503. A party's entitlement to reimbursement for expenses incurred and services rendered under Code § 503(b)(3), (4) and (5) does not depend on, and is independent of, any contractual entitlement to reimbursement. Entitlement depends, instead, on a showing that a "substantial contribution" to the case was made. In contrast, a party's ability to recover compensation under any contractual agreement is determined by the applicable terms of the contract subject to any court-imposed limitation of reasonableness. Compare *In re Nicfur-Cruz Realty Corp.*, 50 B.R. 162 (Bankr.S.D.N.Y.1985). The Indenture provided U.S. Trust with a contractual right to reimbursement and compensation for expenses. U.S. Trust has agreed that it waived its right to receive compensation under the relevant contractual terms of the Indenture from the aggregate amounts payable to the Class 8 debenture holders under the plan as it has distributed the entire amount received to the debenture holders. U.S. Trust's contractual right does not result in automatic entitlement to compensation under Code § 503(b).[3] Thus, this court need not further consider U.S. Trust's contractual entitlement under the terms of the Indenture.

**2.** Curtis initially requested aggregate compensation of $495,000 for 3,650 hours. Subsequently, Curtis amended its figures to exclude certain attorney time and reflect a reduced blended rate. As amended, the breakdown of Curtis' application is as follows:

| Description | Reduced and Blended Time Charge | Percent of Total |
|---|---|---|
| 1. General work on reorganization, Creditors' Committee work and compliance with the usual duties of an indenture trustee in a normal reorganization | $ 76,927 | 20.6% |
| 2. Reorganization indentures, prepared at the Debtors' request. | 29,875 | 8.0% |
| 3. Proceedings in the District Court and in this Court with regard to the matter of the | | |

| Description | Reduced and Blended Time Charge | Percent of Total |
|---|---|---|
| President and Fellows of Harvard College v. United States Trust Company of New York and Marine Midland Bank, N.A. and subsequent related matters. | $ 48,919 | 13.1% |
| 4. Services in connection with the preparation of the Amended Joint Plan of Reorganization and Disclosure Statement. | 141,529 | 37.9% |
| 5. Adversary proceeding and related matters. | 76,179 | 20.4% |
| Totals | $343,429 | 100.0% |

**3.** In some cases the difference may be without economic substance to the debtor because what the indenture trustee is not paid on a substantial

█ The court has carefully reviewed the U.S. Trust Application and supporting documentation and affidavits. With the exception of the work done on the new indentures,[4] the court finds the work to either be routine or to the extent not routine of no quantitative or qualitative value to the reorganization effort of the Debtors. In neither case can the services be deemed a substantial contribution to the case without reducing that test to meaninglessness. The principal effort of Curtis was an attempt to compel Revere to void the Harvard transaction.[5] Some 33.5% of the total time charges, or $125,098 is directly attributed to various aspects of the Harvard transaction. Another 33.9%, or $141,529, is attributed to services in connection with the preparation of the amended plan of reorganization and disclosure statement, which services in substantial measure relate to the Harvard transaction. Curtis categorizes 20.6%, or $76,927, as general work in reorganization, Creditors' Committee work and compliance with the usual duties of an indenture trustee in a normal reorganization.

By an adversary proceeding commenced on May 10, 1985, U.S. Trust sought to have

Revere account for the Harvard Debentures as outstanding and to make appropriate corresponding charges in its plan of reorganization to reflect this fact. As a corollary, U.S. Trust objected to the claim of Marine Midland Bank, N.A. ("Marine"), in the amount of $1,769,913.13 and sought to have it removed from Class 6 Bank Debt and placed in Class 8, the class of the Debentures, as a claim for $2,425,000. The adversary proceeding and the objection were consolidated for purposes of trial, which occurred on August 1, 1985, two days after Revere's Chapter 11 plan was confirmed. On August 9, 1985, this court read its decision into the record and dismissed the adversary proceeding and overruled the objection.[6] In other words, the litigation resulted in a hands down defeat for U.S. Trust. This court found the Harvard Debentures had been cancelled because Revere had caused them to be delivered to U.S. Trust in satisfaction of Revere's December 15, 1982 sinking fund obligation. The court further found that Marine had a Class 6 Bank Claim based on its claim to reimbursement under the letter of credit, a claim which arose in November 1981. The court found U.S. Trust's assertion that Marine's claim based upon the

contribution theory it will receive under the terms of the indenture. Here, however, a substantial contribution award would increase the aggregate expense to Revere because U.S. Trust has given up its right to reimbursement from the pool of funds allocated to the Debentures.

4. Although routine, the court is of the view that the amounts sought by U.S. Trust as administrative fees ($17,041.63) and agency fees ($3,875.90) are compensable as ordinary expenses of administration under Code § 503(a)(1) without the necessity of a showing of substantial contribution. This is so because these fees relate to ordinary and ongoing services necessary for the recordkeeping aspects of a public issue. Revere has not filed any response to the Chelius affidavit and the court therefore presumes these amounts have been calculated in accordance with the standard rate schedule.

5. Briefly, the facts of the Harvard transaction are the following. On November 12, 1981, Revere and the President and Fellows of Harvard College entered into a two-page letter agreement. Under this agreement, Revere could require Harvard to sell ("call"), and Harvard could require Revere to purchase ("put"), the

$2,425,000 face value of the Debentures held by Harvard for $1,721,750, plus interest. Revere had the right to call the Harvard Debentures on or after January 4, 1982 but no later than October 20, 1982. Harvard had the right, if the debentures had not been previously called to put them to Revere on or after October 1, 1982, but not later than October 20, 1982. If either side exercised its option the transaction was to be completed on October 25, 1985 by delivery of the Harvard Debentures to U.S. Trust in exchange for full payment. The agreement provided that Revere would obtain from Marine a standby letter of credit in favor of Harvard in an amount at least equal to the purchase price. Under date of November 23, 1981, Marine issued a letter of credit in Harvard's favor in the amount of $1,770,000 with an expiration date of November 12, 1982.

6. See *In re Revere Copper and Brass Incorporated (U.S. Trust Co. v. Revere Copper and Brass Incorporated and Marine Midland Bank, N.A.)*, 60 B.R. 887 (Bkrtcy.S.D.N.Y.1985).

letter of credit ought to be classified as a Class 8 claim to be untenable and not supported by logic, equity or the law. Slip Opinion at 11. The court found no securities law violation. U.S. Trust failed to offer any admissible evidence to support its allegations that Harvard had required the letter of credit because of Harvard's assessment of Revere's financial condition as precarious. The failure to offer any admissible evidence on this critical issue is even more striking in light of the fact that the trial did not occur until over 2½ years after U.S. Trust first challenged the Harvard transaction.[7]

As the court's decision made clear, U.S. Trust lost sight of the four separate contracts involved and the dates when the various obligations were incurred. Nor did it appear that U.S. Trust had considered the possibility that the Harvard Debentures could be outstanding, yet Marine still have a Class 6 claim. Indeed, the court concluded that it would appear to have been in the best interests of the debentureholders to insist that Revere had tendered the Harvard Debentures and that they had been cancelled because it reduced the outstanding amount of the debenture issue and increased the return to the remaining debentureholders. If the Harvard Debentures were found to be outstanding, Revere's other creditors, or Marine, if it had rights of subrogation, could have insisted on a pass-through of Revere's pro-rata debenture distribution. In addition, Marine would still have had its claim to reimbursement under the letter of credit.

By the time U.S. Trust commenced the adversary proceeding and filed the objection, the reorganization efforts had finally culminated in a consensual, except for U.S. Trust, plan of reorganization, which was confirmed shortly prior to issuance of the court's decision in the adversary proceeding. If the Harvard transaction was truly

an issue of fundamental importance, U.S. Trust should have litigated the issues significantly earlier. Due to their timing, the efforts of U.S. Trust in fact and at best only served to impede implementation of the plan desired and agreed to by all other creditors. Moreover, this court finds the issues were not ones of importance as there was limited, if any, upside potential for the debentureholders from the litigation. The expenses incurred are such that even if the litigation had been successful, that limited potential would have been significantly reduced by the litigation expense. Likewise, the $141,529 expense relative to the disclosure statement amendments could have been avoid altogether had the Harvard transaction litigation been conducted earlier.[8]

It is clear that the effort expended by U.S. Trust and Curtis in connection with the Harvard transaction had an effect on the reorganization comparable to the effect of a windless sail on a boat's forward movement.

This is not to say that the ultimate outcome of any litigation will in and of itself determine a party's ability to recover reimbursement for expenses incurred and services rendered under Code § 503(b)(3), (4) or (5). "Substantial contribution" may not always be synonymous with victory in litigation relevant to a Chapter 11 case. There may be instances where the mere existence of the litigation, the quality of the representation therein, and/or the strength and merits of the party's legal or factual case greatly adds to and benefits the reorganization of a Chapter 11 debtor regardless of the litigation's ultimate outcome. This is just not one such case.

U.S. Trust relies on *In re Penn-Dixie Industries, Inc.,* 18 B.R. 834 (Bankr.S.D.N.Y.1982) to support its request by analogizing the role it played in the Revere proceed-

---

**7.** It does not appear that the Curtis firm ever conducted discovery of Harvard to determine what Harvard's reasons were for insisting on the letter of credit. Surely the taking of depositions in Boston of the relevant persons could have been arranged in the 2½ years this dispute was smoldering.

**8.** As the Debtor's and Marine's positions on the issue had remained unchanged from the outset, U.S. Trust can hardly justify its delay in litigating the issue by stating that it needed to see the plan first. Nor can it rely on the uncertainty that any plan would be confirmed because that possibility was factually remote.

**898**

ings to the role the indenture trustee played in the Penn-Dixie case. Unfortunately, this analogy is flawed. In *Penn-Dixie*, the court found the success of the proceedings were in large measure attributable to the high degree of professional skill and effective performances of each of the fee applicants, including one of which was the indenture trustee. The adjectives used by the court to describe the role and participation of the Penn-Dixie indenture trustee included "vital and highly visible." U.S. Trust was highly visible at times in the Revere reorganization. However, its efforts do not merit characterization as vital.

This court must deny U.S. Trust's application under Code § 503(b)(3), (4) and (5) except to the extent of an allowance of compensation to Curtis in the amount of $29,875 for preparation of the indentures. However, the court will grant an additional $20,917.53 of the application representing the Indenture Trustee's administrative and agency fees as an ordinary expense of administration under Bankruptcy Code § 503(b)(1).

Revere is directed to pay the amount awarded within fifteen (15) days from the date hereof.

It is so ordered.