874 F.2d 576
 19 Bankr.Ct.Dec. 584, Bankr. L. Rep. P 72,878
 In re FLIGHT TRANSPORTATION CORPORATION SECURITIES LITIGATION.
MANUFACTURERS HANOVER TRUST COMPANY, as Indenture Trustee, Appellant,
v.
Thomas C. BARTSH, Receiver/Debtor-in-Possession; Committee
of Unsecured Creditors; and William Westphal,
U.S. Bankruptcy Trustee, Appellees.
 No. 87-5414.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 19, 1988.
Decided May 12, 1989.
 
 Edward Roberts, II, New York City, for appellant.
 Thomas Bartsh and Howard S. Myers, III, Minneapolis, Minn., for appellees.
 Before McMILLIAN and ARNOLD, Circuit Judges, and LARSON,* Senior District Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Manufacturers Hanover Trust Co. (MHT) appeals from an order entered in the District Court[1] for the District of Minnesota denying in part its application for administrative expenses under 11 U.S.C. Sec. 503(b)(3)(D), (4), (5). In re Flight Transportation Corp. Securities Litigation, 78 B.R. 562 (D.Minn.1987). For reversal MHT argues the district court erred in holding that, as a matter of law, an indenture trustee that has fulfilled its statutory fiduciary duties has not, by virtue of that fact alone, made a "substantial contribution in a [reorganization] case" under 11 U.S.C. Sec. 503(b). Alternatively, MHT argues the district court erred in granting it only $18,457 for compensation and expenses pursuant to Sec. 607 of the Indenture Agreement under 11 U.S.C. Sec. 502. For the reasons discussed below, we affirm in part, reverse in part and remand for further proceedings.
 
 
 2
 This is one of the final chapters in the story of the sudden, and expensive, collapse of Flight Transportation Corp. (FTC). For a more complete history of the FTC litigation, see In re Flight Transportation Corp. Securities Litigation, 730 F.2d 1128 (8th Cir.1984), cert. denied, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985). FTC and its subsidiaries were in the air charter business and provided general aviation services. In June 1982 there were two public offerings of FTC securities--one of 715,000 shares of common stock and another of 25,000 "units" consisting of debentures plus stock warrants. Pursuant to an Indenture Agreement executed on June 14, 1982, MHT was the indenture trustee for $25 million of FTC 11 1/4% Sinking Fund Debentures due June 1, 1995. In Sec. 607 of the Indenture Agreement, FTC agreed to pay MHT reasonable compensation for its services and to reimburse it for its reasonable expenses, including its attorney's fees and expenses.
 
 
 3
 On June 18, 1982, the Securities and Exchange Commission (SEC) halted trading in FTC securities and filed enforcement proceedings against FTC, its subsidiaries, and its president and chief executive officer, William Rubin, in federal district court in Minnesota, alleging they violated federal securities laws. The SEC alleged that FTC securities were sold at artificially inflated values because FTC had overstated its revenues and inaccurately reported its performance history. The SEC sought an injunction against further violations, an accounting, and an order of disgorgement. The district court granted a temporary restraining order and appointed a receiver. The receiver transferred some $22.7 million, representing the remaining proceeds of the June 1982 securities offerings, from FTC's corporate bank account to an escrow account in a different bank.
 
 
 4
 Almost immediately, various interested parties began filing lawsuits and claims against the escrow fund. On June 23, 1982, FTC's lead underwriters, Drexel Burnham Lambert Inc. and Moseley, Hallgarten, Estabrook & Weeden, filed a class action in federal district court in Minnesota, on behalf of themselves and others who had purchased FTC securities, and sought to impose a constructive trust on the escrow fund. On June 29, 1982, several major creditors filed an involuntary Chapter 11 bankruptcy petition against FTC in the bankruptcy court in Minnesota.
 
 
 5
 Other individual and class action lawsuits were filed against FTC, its subsidiaries, officers, directors, accountants, underwriters, bankers, and insurers. Many of these defendants filed cross-claims for indemnification against other defendants. By October 1982 some 22 cases had been filed. These cases were consolidated with a class action that had been filed on behalf of all persons who had purchased FTC securities between November 30, 1979, and June 18, 1982, the date the SEC halted trading in FTC securities. Antinore v. Flight Transportation Corp., Master Docket No. 4-082-874 (D.Minn.1982).
 
 
 6
 Representatives of the purchasers of FTC securities and certain business creditors soon began negotiating among themselves in order to resolve their competing claims to the escrow fund. These negotiations resulted in the Sharing Agreement, which was signed on April 15, 1983, and approved by the district court. (The Sharing Agreement has been amended several times.) Under the Sharing Agreement, persons, including the receiver and the bankruptcy estate, who had claims against FTC or other defendants (that is, the underwriters, accountants, bankers, etc.) or both, agreed to pool their recoveries, whether from the escrow fund, other assets of FTC, or damage actions against any of the defendants, and to disburse the money among themselves according to an agreed-upon schedule. This court upheld the Sharing Agreement in In re Flight Transportation Corp. Securities Litigation, 730 F.2d at 1132-33.
 
 
 7
 In the meantime, the FTC bankruptcy cases were withdrawn from the bankruptcy court and assigned to Judge Weiner. In April 1984, however, a year after the Sharing Agreement was signed, the receiver proposed a partial reference of the bankruptcy litigation back to the bankruptcy court. In March 1986, over MHT's objection, Judge Weiner referred the bankruptcy litigation back to the bankruptcy court[2] for confirmation and implementation of the proposed plan of reorganization. In September 1986, Bankruptcy Judge Kressel confirmed the plan of reorganization.
 
 
 8
 In August 1986, MHT sought to modify the scope of the order of reference to exclude its application for administrative expenses because Judge Weiner had presided over most of the consolidated FTC securities and bankruptcy litigation and was thus uniquely qualified to evaluate its performance as indenture trustee. In November 1986, Judge Weiner clarified the scope of the earlier order of reference: all "core proceedings" in the bankruptcy litigation were referred to the Bankruptcy Court for the District of Minnesota, but the district court retained jurisdiction to determine the amount due MHT under the indenture agreement or as an administrative expense. In re Flight Transportation Corp., No. 4-82-1154 (D.Minn. Nov. 7, 1986) (Pre-trial Order No. 274).
 
 
 9
 MHT argued that it was entitled to administrative expenses under 11 U.S.C. Sec. 503(b)[3] because it had made a "substantial contribution" in the FTC reorganization case by fulfilling its fiduciary duties as required by the Trust Indenture Act of 1939, 15 U.S.C. Sec. 77aaa et seq. (TIA). Section 315(c) of the TIA, 15 U.S.C. Sec. 77ooo (c), provides that in the event of a default, the indenture trustee is "to exercise ... such of the rights and powers vested in it by such indenture, and to use the same degree of care and skill in their exercise, as a prudent [person][4] would exercise or use under the circumstances in the conduct of his [or her] own affairs." MHT sought a total of $174,603.36, plus interest--$2,691.59 for its expenses as indenture trustee under 11 U.S.C. Sec. 503(b)(3)(D), $153,454.77 for its attorney's fees and expenses under 11 U.S.C. Sec. 503(b)(4), and $18,457 as reasonable compensation for its services as indenture trustee under 11 U.S.C. Sec. 503(b)(5). Most of the amount requested represented MHT's attorney's fees and expenses. MHT had initially retained the New York law firm of Kelley Drye & Warren for advice in connection with the indenture agreement; MHT later retained as local counsel the Minneapolis law firm of Leonard, Street & Deinard.
 
 
 10
 In the alternative, MHT argued that this amount was an "allowed claim" under 11 U.S.C. Sec. 502 because, in Sec. 607[5] of the Indenture Agreement, FTC had agreed to pay MHT reasonable compensation for its services and to reimburse MHT for its reasonable expenses, including its attorney's fees and expenses. MHT had filed a proof of claim for its fees and expenses in July 1983.
 
 
 11
 The receiver, the unsecured creditors' committee and the United States Trustee filed objections to MHT's application.
 
 
 12
 The district court denied MHT's application for administrative expenses under Sec. 503(b). 78 B.R. at 563-65. First, the district court held there was no difference between indenture trustees and the other entities listed in Sec. 503(b)(3)(D). Id. at 563. Then the district court decided there was no conflict between the "substantial contribution" standard in Sec. 503(b) and the TIA's "prudent person" standard, id., and specifically held that "an indenture trustee who performs meritorious service in accordance with its indenture responsibilities for the benefit of debenture holders is not, simply by virtue of that fact, considered to have made a 'substantial contribution' to the [bankruptcy] estate." Id. at 564. The district court then reviewed the application, affidavits and exhibits and found that MHT had "not made a substantial contribution to the progress of these proceedings" because, although MHT had acted properly to protect the interests of the debenture holders, it did not participate in the formulation of the Sharing Agreement. Id.
 
 
 13
 The district court then turned to MHT's alternative Sec. 502 claim. The district court interpreted Sec. 607 of the Indenture Agreement as an agreement by FTC to pay MHT "reasonable compensation for services rendered which are beneficial to the proper administration of the debtor's estate." Id. The district court found, however, that "only a small percentage of the services rendered and fees expended constitute a compensable claim for pre-petition services which were beneficial to the proper administration of the debtor's estate" and allowed MHT only $18,457. Id. at 564-65. This appeal followed.[6]
 
 
 14
 As noted by the court during oral argument, the procedural posture of this case was unusual. Judge Weiner ruled on MHT's application for administrative expenses in his capacity as the designated district judge and not as the designated bankruptcy judge. In re Flight Transportation Corp. Securities Litigation, Master Docket No. 4-82-874 (MDL No. 517) (D.Minn. Sept. 4, 1987) (clarifying that Pre-Trial Order No. 300, the order now on appeal, was an order of the district court and not the bankruptcy court). As noted above, Judge Weiner had been designated by the Judicial Panel on Multi-District Litigation to sit as the district judge and as the bankruptcy judge in the consolidated FTC securities and bankruptcy litigation (Judge Weiner's reaction, if any, to this dual designation was not part of the record on appeal). We hold that we do not have jurisdiction over this appeal under 28 U.S.C. Sec. 158(d), but that we do have jurisdiction under 28 U.S.C. Sec. 1291.
 
 
 15
 Under 28 U.S.C. Sec. 158(d), the statute governing bankruptcy appeals, the courts of appeals have jurisdiction over "appeals from all final decisions, judgments, orders, and decrees" of district courts reviewing final decisions of bankruptcy courts. The present appeal is not, however, from a final order of the district court reviewing a final order of the bankruptcy court. There was no underlying bankruptcy court order. This is an appeal from an order of a district court sitting in bankruptcy. Therefore, if we have appellate jurisdiction, it must be pursuant to 28 U.S.C. Sec. 1291, the statute governing appeals from final district court orders. See, e.g., In re Louisiana World Exposition, Inc., 832 F.2d 1391, 1395 & n. 3 (5th Cir.1987); In re Hawaii Corp., 796 F.2d 1139, 1141 (9th Cir.1986). Cf. In re Greene County Hospital, 835 F.2d 589, 593-95 (5th Cir.1988) (comparing more flexible concept of "finality" for purposes of bankruptcy appeals under 28 U.S.C. Sec. 158 with "finality" under 28 U.S.C. Sec. 1291).
 
 
 16
 For purposes of 28 U.S.C. Sec. 1291, a "final" decision is "one which ends the litigation ... and leaves nothing for the court to do but execute judgment." Catlin v. United States, 324 U.S. 229, 233-34, 65 S.Ct. 631, 633-34, 89 L.Ed. 911 (1945). The district court order in the present case is not "final" because it does not represent the very end of the entire FTC bankruptcy litigation (or, for that matter, the related securities litigation). However, we think this order falls within the narrow collateral order exception and, thus, is a final appealable order under 28 U.S.C. Sec. 1291. See, e.g., In re Hawaii Corp., 796 F.2d at 1142-43, citing Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949), Forgay v. Conrad, 47 U.S. (6 How.) 201, 203-06, 12 L.Ed. 404 (1848), and In re Regency Woods Apartments, Ltd., 686 F.2d 899, 902 (11th Cir.1982) (per curiam). For all practical purposes, this order represents the district court's definitive ruling on this particular issue. Whether or not MHT is entitled to administrative expenses is a discrete issue, independent of and easily separable from the other issues raised in the underlying bankruptcy litigation. Prompt review would protect important interests not only of MHT and, indirectly, its attorneys, but also of the bankruptcy estate. Finally, the fact that this is an original district court order, and not a district court order reviewing a final order of the bankruptcy court, means that it is effectively unreviewable under 28 U.S.C. Sec. 158.
 
 
 17
 ADMINISTRATIVE EXPENSES UNDER 11 U.S.C. SEC. 503(B)
 
 
 18
 The parties agree that the applicable standard under 11 U.S.C. Sec. 503(b) is substantial contribution. They also agree that MHT zealously performed its fiduciary duties in connection with this bankruptcy litigation, thus satisfying the TIA's prudent person standard. What the parties disagree about is how "substantial contribution" should be defined for indenture trustees. Determination of the appropriate standard is a question of law. Therefore, we will review the district court's definition of the appropriate standard de novo.
 
 
 19
 MHT argues that the TIA's prudent person standard defines the role of an indenture trustee in bankruptcy proceedings. Therefore, MHT argues that an indenture trustee that acts as a "prudent person" should be held, as a matter of law, to have made a "substantial contribution in a [Chapter 11] case" within the meaning of 11 U.S.C. Sec. 503(b). The receiver and the unsecured creditors' committee argue that acting as a fiduciary is not necessarily the same as making a substantial contribution. In their view, it is possible for an indenture trustee to act as a prudent person, thus fulfilling its fiduciary obligations to its debenture holders, and yet not make the requisite "substantial contribution in a [reorganization] case." For this reason, they argue that the district court correctly held that an indenture trustee that acts as a fiduciary has not, on that basis alone, made a "substantial contribution in a [reorganization] case" within the meaning of Sec. 503(b). For the reasons discussed below, we agree with the analysis of the district court.
 
 
 20
 First, because the language of Sec. 503(b) expressly requires "substantial contribution," Sec. 503(b) must require something more than satisfactory performance of fiduciary duties. The statute does not entitle an indenture trustee to compensation and expenses simply on the basis of its status as an indenture trustee. For example, Sec. 503(b)(3)(D) provides that administrative expenses may be allowed for "actual, necessary expenses" incurred by an indenture trustee "in making a substantial contribution in a case under chapter 9 or 11 of this title." It does not provide merely that administrative expenses may be allowed for "actual, necessary expenses incurred by an indenture trustee." Similarly, Sec. 503(b)(5) provides that administrative expenses may be allowed for "reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a case under chapter 9 or 11 of this title." It does not provide merely that administrative expenses may be allowed for "reasonable compensation for services rendered by an indenture trustee."
 
 
 21
 Interpreting "substantial contribution" to require something more than satisfactory performance as an indenture trustee is also consistent with the overall bankruptcy scheme. Administrative expenses under Sec. 503(b) constitute priority claims which are paid directly out of the bankruptcy estate. Their allowance may diminish the recovery of creditors and other claimants. For this reason, priority statutes are strictly construed. E.g., In re D.W.G.K. Restaurants, Inc., 84 B.R. 684, 689 (Bankr.S.D.Cal.1988).
 
 
 22
 Ordinarily, the indenture trustee must look to the obligor, or the debenture holders, and not the bankruptcy estate for compensation and reimbursement of its expenses. See In re Multiponics, Inc., 436 F.Supp. 1072, 1076 (E.D.La.1977) (indenture agreement), aff'd, 622 F.2d 731 (5th Cir.1980); In re Revere Copper & Brass, Inc., 60 B.R. 892, 895 (Bankr.S.D.N.Y.1986) (comparing entitlement to compensation and expenses under indenture agreement with independent entitlement under Sec. 503(b)). Section 503(b) is an exception to this general principle. See, e.g., In re Washington Lane Assocs., 79 B.R. 241, 243 (Bankr.E.D.Pa.1987) (creditor).
 
 
 23
 In addition, unlike the professionals employed by the trustee, a debtor-in-possession or a creditor's committee, whose employment requires prior court approval, prior court approval is not required under Sec. 503(b). See, e.g., id. at 242 (11 U.S.C. Secs. 327, 328); In re Rockwood Computer Corp., 61 B.R. 961, 963 (Bankr.S.D.Ohio 1986) (11 U.S.C. Sec. 330). "[Section 503(b) ] applications are filed after the fact, that is, after the services have been performed or the expenses have been incurred, and without prior court approval, and in many instances, without the court's knowledge." In re Saroca Corp., 46 B.R. 533, 535 (Bankr.D.Me.1985).
 
 
 24
 More importantly, unlike the trustee, the debtor-in-possession and the official creditors' committee, which are entities with fiduciary obligations to the bankruptcy estate, an indenture trustee owes its fiduciary duty to the debenture holders, not the bankruptcy estate. The indenture trustee acts in the best interest of its debenture holders. In order to satisfy its fiduciary duty to its debenture holders, the indenture trustee may take actions that are of only marginal or incidental benefit to the bankruptcy estate. The bankruptcy estate should not have to pay for services which primarily benefit the debenture holders and only incidentally benefit the bankruptcy estate.
 
 
 25
 Case law has recognized the substantial contribution test as the dividing line between services which are compensable and those which are not. "The appropriate test under Section 503(b) is whether the services substantially contributed to a successful result, that is, an actual and demonstrable benefit to the debtor's estate, the creditors, and to the extent relevant, the stockholders." In re Jensen-Farley Pictures, Inc., 47 B.R. 557, 569 (Bankr.D.Utah 1985); accord In re Consolidated Bancshares, Inc., 785 F.2d 1249, 1252-54 (5th Cir.1986) (Sec. 503(b)(4)); In re D.W.G.K. Restaurants, Inc., 84 B.R. at 688-90 (Sec. 503(b)(3)(D)); In re Ace Finance Co., 69 B.R. 827, 828-31 (Bankr.N.D.Ohio 1987) (Sec. 503(b)(3)(D)); In re Revere Copper & Brass, Inc., 60 B.R. at 895-98 (indenture trustee, Sec. 503(b)(3)(D), (4), (5)); In re General Oil Distributors, Inc., 51 B.R. 794, 805-06 (Bankr.E.D.N.Y.1985) (Sec. 503(b)(3)(D)); In re White Motor Credit Corp., 50 B.R. 885, 907-08 (Bankr.N.D.Ohio 1985) (Sec. 503(b)(3)(D), (5)); In re Calumet Realty Co., 34 B.R. 922, 925-26 (Bankr.E.D.Pa.1983) (Sec. 503(b)(3)(D)); In re Richton International Corp., 15 B.R. 854, 855 (Bankr.S.D.N.Y.1981) (Sec. 503(b)(4)); see also In re Multiponics, Inc., 436 F.Supp. at 1076-77 (indenture trustee awarded attorney's fees and expenses under Sec. 242 benefit to the estate test); In re Four Seasons Nursing Centers of America, Inc., 357 F.Supp. 594, 606-08 (W.D.Okla.1973) (indenture trustee awarded compensation and attorney's fees under Sec. 242 benefit to the estate test); In re International Power Securities Corp., 119 F.Supp. 31, 37-38 (D.N.J.1954) (same); see generally 3 W. Collier, Collier on Bankruptcy p 503.04[d], at 503-47 to -49 (15th ed. 1988) (hereinafter Collier).
 
 
 26
 MHT's fiduciary duty argument was rejected in In re Multiponics, Inc., 436 F.Supp. at 1075-76, a case involving the claim of an indenture trustee for compensation and expenses under Sec. 242 of the old Bankruptcy Act, 11 U.S.C. Sec. 642, the predecessor of Sec. 503(b). Section 242 provided that indenture trustees could be allowed "reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in connection with the administration of an estate." For a discussion of the legislative history of Sec. 503(b) and the relationship between Sec. 242 and Sec. 503(b), see In re Rockwood Computer Corp., 61 B.R. at 964-65, In re Jensen-Farley Pictures, Inc., 47 B.R. at 565-69, and Collier p 503.04[d], at 503-47 to -49.
 
 
 27
 In Multiponics it was undisputed that the indenture trustee had acted in accordance with the TIA's "prudent person" standard. The indenture trustee had conducted an independent investigation into the reasons for the debtor's collapse and, as a result of that investigation, the reorganization trustee sued the debtor's former officers and directors. The indenture trustee assisted the reorganization trustee in preparing for trial. The indenture trustee also closely monitored the reorganization proceedings and objected to the claims of certain secured creditors whose claims, if successful, could have depleted the estate. Although all of the actions undertaken by the indenture trustee as a fiduciary protected the interests of its debenture holders, only some of them also benefited the estate. The indenture trustee argued that it was entitled to compensation from the estate because its participation in the bankruptcy proceedings had been mandated by the TIA. The district court acknowledged that the TIA required an indenture trustee to participate in bankruptcy proceedings and that Sec. 242 compensated the indenture trustee for such participation, but held that "it is implicit in the text of Section 242 that the [bankruptcy] estate is not responsible for services that are purely of benefit to the debenture holding creditors." Id. at 1076. The district court then distinguished those services which were primarily of benefit to the debenture holders from those which were beneficial to the estate and allowed only the latter as administrative expenses. Id. at 1077.
 
 
 28
 "The inquiry regarding a substantial contribution is one of fact." In re Consolidated Bancshares, Inc., 785 F.2d at 1253. In the present case, the district court found that MHT did not make a substantial contribution to the reorganization case because it did not participate in the formulation of the Sharing Agreement. We cannot say that the district court's finding of fact is clearly erroneous. To a significant degree, the Sharing Agreement represented not only a settlement of the FTC securities litigation but the FTC bankruptcy litigation as well. MHT's decision to merely observe the Sharing Agreement negotiations did not "foster and enhance" the progress of the reorganization case. See In re Calumet Realty Co., 34 B.R. at 924.[7] In the final analysis, the many services provided by MHT, including monitoring and intervening in the FTC security and bankruptcy litigation, filing proofs of claims, and communicating with and advising the debenture holders, were primarily of benefit to the debenture holders and not to the bankruptcy estate.
 
 ALLOWED CLAIM UNDER 11 U.S.C. SEC. 502
 
 29
 In the alternative, MHT argues the district court erred in granting it only $18,457 as an allowed claim under 11 U.S.C. Sec. 502.[8] The district court limited MHT to compensation for its "pre-petition services which were beneficial to the proper administration of the debtor's estate." 78 B.R. at 564-65. MHT argues that nothing in Sec. 607 of the Indenture Agreement or in Sec. 502 limits its claim to services which are beneficial to the proper administration of the estate and that its entire claim, not just the $18,457, is a pre-petition claim.
 
 
 30
 The receiver and the unsecured creditors' committee argue that the district court correctly limited the amount of the claim as of the date of the filing of the petition in bankruptcy. They also argue that in any event, under the terms of the Sharing Agreement, MHT waived any claim under Sec. 502.
 
 
 31
 We think the district court defined "claim" too narrowly for purposes of Sec. 502. The Bankruptcy Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. Sec. 101(4). "Congress sought the 'broadest possible definition' of a claim, intending that virtually all obligations to pay money be amenable to treatment in bankruptcy proceedings." In re Robinson, 776 F.2d 30, 34 (2d Cir.1985) (right to restitution), rev'd on other grounds sub nom. Kelly v. Robinson, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). In the present case, we think MHT had a "claim." Under Sec. 607 of the Indenture Agreement, MHT had a contractual right to payment for its services and to reimbursement of its expenses, including its attorney's fees. This right to payment arose when the Indenture Agreement was executed. The petition in bankruptcy was not filed until about two weeks later. Thus, as of the date of the filing of the petition in bankruptcy, MHT had a right to payment but the amount due was unknown.
 
 
 32
 The district court did not consider whether MHT had waived its contractual right to compensation for its services and to reimbursement of its expenses under the terms of the Sharing Agreement. The district court is in the best position to decide this issue. If MHT did not waive its claim, the confirmation plan would govern its order of payment.
 
 
 33
 In sum, we affirm the district court's "substantial contribution" analysis under 11 U.S.C. Sec. 503(b), but reverse the district court's limited definition of a "claim" under 11 U.S.C. Sec. 502, and remand the case for further proceedings. On remand, the district court should determine whether MHT waived its right to payment of this claim under the terms of the Sharing Agreement.
 
 
 34
 Accordingly, the order of the district court is affirmed in part, reversed in part and remanded for further proceedings.
 
 
 
 *
 The Honorable Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable Charles R. Weiner, United States District Judge for the Eastern District of Pennsylvania, sitting by special designation in the District of Minnesota. The Judicial Panel on Multi-District Litigation initially designated Judge Weiner to sit as the district judge in the securities fraud litigation and later as the bankruptcy judge
 
 
 [2]
 The Honorable Robert J. Kressel, United States Bankruptcy Judge for the District of Minnesota
 
 
 [3]
 Title 11 U.S.C. Sec. 503(b) provides in part (emphasis added):
 After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--
 ....
 (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection incurred by--
 ....
 (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; ...
 ....
 (4) reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;
 (5) reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a case under chapter 9 or 11 of this title, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title....
 
 
 [4]
 The statute uses the term "prudent man."
 
 
 [5]
 Section 607 of the Indenture Agreement provides:
 [FTC] agrees
 (1) to pay to [MHT] from time to time reasonable compensation for all services rendered by it hereunder (which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust);
 (2) except as otherwise expressly provided herein, to reimburse [MHT] upon its request for all reasonable expenses, disbursements and advances incurred or made by [MHT] in accordance with any provision of this Indenture (including the reasonable compensation and the expense and disbursements of its agents and counsel), except any such expense, disbursement or advance as may be attributable to its negligence or bad faith; and
 (3) to indemnify [MHT] for, and to hold it harmless against, any loss, liability or expense incurred without negligence or bad faith on its part, arising out of or in connection with the acceptance or administration of this trust, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties thereunder.
 As security for the performance of the obligations of [FTC] under this Section [MHT] shall have a lien prior to the Debentures upon all property and funds held or collected by [MHT] as such, except funds held in trust for the payment of principal of (and premium, if any) or interest on Debentures.
 
 
 [6]
 Only MHT filed an appeal; no cross-appeal was filed. The United States Trustee did not join the receiver and the unsecured creditors' committee in this appeal
 
 
 [7]
 The fact that MHT unsuccessfully questioned the validity of the Sharing Agreement and opposed certain aspects of the proposed confirmation plan would not have precluded a finding of substantial contribution. " 'Substantial contribution' may not always be synonymous with victory in litigation relevant to a Chapter 11 case." In re Revere Copper & Brass, Inc., 60 B.R. 892, 897 (Bankr.S.D.N.Y.1986)
 [Substantial contribution] does not necessarily require such contribution as will lead to confirmation of a plan for, in many cases, it might be a more valuable and substantial contribution if the action of the ... indenture trustee ... has led to proceedings leading to a denial of confirmation of a plan. The most obvious instance would be the discovery of fraud in connection with the case.
 
 
 [3]
 W. Collier, Collier on Bankruptcy p 503.04[d], at 503-47 (15th ed. 1988) (footnote omitted)
 
 
 [8]
 Title 11 U.S.C. Sec. 502(a) provides: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed unless a party in interest ... objects."